# STATE OF MICHIGAN

# COURT OF APPEALS

JENNIFER ANNE THOMPSON, formerly known
as JENNIFER TENNANT,

UNPUBLISHED
September 11, 2018

Plaintiff-Appellee,

v

No. 342867
Clare Circuit Court
Family Division
LC No. 12-900180-DM

BLAIR KURTISS HENZE,

Defendant-Appellant.

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

Defendant, Blair Kurtiss Henze, appeals as of right an order modifying the court's custody and parenting-time orders with regard to plaintiff, Jennifer Anne Thompson, and their child, JH. The court granted physical custody to plaintiff, with parenting time for defendant, and it awarded joint legal custody. We affirm.

Plaintiff and defendant were married in 2001 and divorced in 2009. The court granted both parties legal custody of JH, defendant physical custody, and plaintiff parenting time of one day a week. Plaintiff indicated at the hearing that she was satisfied with the arrangement because she believed that JH would be residing with Patricia Henze ("Patricia"), his paternal grandmother. In 2010, defendant agreed to a limited-guardianship relationship, and Patricia became JH's limited guardian. In April 2010, plaintiff was granted parenting time with JH every other weekend.

In 2017, plaintiff filed a motion to modify custody, parenting time, and child support. She stated that she exercised her parenting time between 2010 and 2017 according to the custody and parenting-time agreement and pursuant to the limited guardianship. Plaintiff represented that in August 2017, Patricia filed a petition requesting that the guardianship continue but that JH be allowed to move to Westland, Michigan, to live with defendant. Plaintiff stated that she contested the move and filed a petition to terminate the guardianship.

Plaintiff asserted that JH was already living in Westland before defendant and Patricia received the court's confirmation that his move was approved. Plaintiff stated that the court presiding over the guardianship matter ruled that, because JH was already living in Westland, he

-1-

could remain there until the court decided whether the guardianship should be terminated. Plaintiff requested that the guardianship be terminated so that JH could remain in the community in which he had lived for the prior seven years, and because plaintiff had a home where JH could have his own bedroom. The record indicates that Patricia's guardianship of JH was terminated in November 2017.

After hearing testimony from the parties, and reviewing allegations of domestic violence and alcohol abuse that the Michigan Department of Health & Human Services (DHHS)[1] made in reports about defendant's home, a Friend of the Court referee awarded plaintiff sole physical custody and the parties joint legal custody of JH. Defendant was granted three weekends of parenting time a month and eight weeks of parenting time in the summer. The referee found that JH had an established custodial environment with neither parent because he lived with his grandmother under a limited guardianship for several years before he moved during the proceedings. The referee found that the best-interests factors, as enumerated in MCL 722.23, weighed in favor of granting plaintiff's request for physical custody of JH. The trial court adopted the referee's recommendations.

Defendant filed timely objections to the referee's recommendations and filed a motion for a de novo hearing. After the de novo hearing, the court agreed with the referee's findings regarding statutory best-interests factors (a), (c), (f), (g), (i), (j), and (k). The court disagreed with the referee's determinations regarding factors (b), (d), (h). The court weighed factors (e) and (l), although the referee did not weigh them. Ultimately, it found that plaintiff met her burden and demonstrated that a proper cause or change of circumstances existed, that JH had no established custodial environment, and that there was more than a preponderance of the evidence that JH's best interests would be served by a change of custody. The court granted the parties joint legal custody and plaintiff sole physical custody of JH.

Defendant argues that the court's findings were against the great weight of the evidence and that the trial court abused its discretion by awarding plaintiff custody of JH. We disagree.

All custody orders must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue. MCL 722.28. Under the great-weight standard, the trial court's determination is to be affirmed unless the evidence clearly preponderates in the other direction. *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). This standard applies to findings concerning the existence of an established

---

[1] Notably, defendant has provided neither the DHHS report nor the guardianship file to this Court on appeal. The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Because defendant has not provided the guardianship file or DHHS report to this Court, defendant has effectively abandoned any challenge to the information contained in them, and we will presume that the trial court properly summarized and relied upon this information when making its decision.

custodial environment, the existence of cause to modify custody, and findings regarding each custody factor. *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009); *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). The abuse-of-discretion standard applies to the trial court's discretionary rulings; to whom custody is granted is such a discretionary ruling. *Fletcher v Fletcher*, 447 Mich 871, 879, 900; 526 NW2d 889 (1994). An abuse of discretion exists in the context of a child-custody case when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Id*.

First, defendant argues that the trial court erred by finding that JH did not have an established custodial environment. We conclude that defendant's argument lacks merit because JH had recently been uprooted from his prior environment and the great weight of the evidence supported the court's finding that he had not yet established a custodial environment with defendant.

Whether an established custodial environment exists is a question of fact that the trial court must address before it determines the child's best interests. *Brausch v Brausch*, 283 Mich App 339, 356 n 7; 770 NW2d 77 (2009). The trial court must make a specific finding regarding the existence of an established custodial environment. *Jack v Jack*, 239 Mich App 668, 670; 610 NW2d 231 (2000). A custodial environment is established if,

> over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

An established custodial environment is one of significant duration, both physical and psychological, in which the relationship between the custodian and child is marked by security, stability, and permanence. *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981); *Berger*, 277 Mich App at 706.

In this case, evidence was presented that, before the dissolution of the guardianship in 2017, JH lived with Patricia, attended school in her community, and was covered on her health-insurance plan. Patricia had physical custody of JH for nearly seven years. Evidence was presented that up until his move to Westland, both parents visited JH at Patricia's home. This evidence indicates that the established custodial environment was with Patricia during the period of her guardianship, and with neither plaintiff nor defendant.

Defendant argues that because JH was living with him before the court's modification of the custody order, he established a custodial environment in his home with JH. An established custodial environment can exist in more than one home. *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007). However, changes in physical custody and uncertainty created by upcoming custody proceedings may destroy a custodial environment. See *Rains v Rains*, 301 Mich App 313, 333; 836 NW2d 709 (2013). Additionally, a court order, standing alone, does not create an established custodial environment. *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995).

Defendant's home and Patricia's home could hypothetically both be established custodial environments. However, before the dissolution of the guardianship in November 2017, Patricia moved JH to defendant's home. Upon learning that JH was living in Westland, plaintiff filed a petition to terminate the guardianship and to modify the custody order in this case. The fact that the court allowed JH to live with defendant during the period before its final decision, standing alone, did not establish a custodial environment. We conclude that the court's finding that a custodial environment existed with neither plaintiff nor defendant was supported by the great weight of the evidence. The evidence did not clearly preponderate against the court's finding that a custodial environment did not exist with defendant in Westland because JH's move to Westland changed JH's physical custody and created uncertainty due to the commencement of custody proceedings.

Next, defendant argues that the court's best-interests findings were not supported by the great weight of the evidence. We disagree and conclude that the court's findings were supported by the great weight of the evidence.

"Above all, custody disputes are to be resolved in the child's best interests," as measured by the factors set forth in MCL 722.23. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). The trial court must consider and explicitly state its findings and conclusions regarding each factor, and the failure to do so is usually error requiring reversal. *Rivette v Rose-Molina*, 278 Mich App 327, 329-330; 750 NW2d 603 (2008). However, the court need not "comment upon every matter in evidence or declare acceptance or rejection of every proposition argued." *Baker*, 411 Mich at 583.

The best-interests factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

-4-

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

A single circumstance can be relevant to and considered in determining more than one of the child-custody factors. *Fletcher v Fletcher* (*After Remand*), 229 Mich App 19, 24-25; 581 NW2d 11 (1998). In making its findings, the court reviewed the transcript from the parties' hearing before the referee, reviewed evidence submitted by DHHS, took into consideration testimony at the de novo hearing, took judicial notice of the guardianship file, and conducted an in camera interview with JH.

The court found that both parties were equal under factor (a) and provided love and affection for their son. This finding was supported by testimony that plaintiff and defendant both visited with JH during the limited guardianship with his grandmother, exercised their parenting time, were involved in his academic life, and demonstrated a willingness to raise him and care for him. The great weight of the evidence supported the court's finding that the parties were equal under factor (a).

The court found that the parties were equal under factor (b), the capacity and disposition of parties to give the child love, affection, and guidance, including raising the child in his or her religion. The court found that JH's grandmother raised him as a Jehovah's Witness, and defendant had gone to Jehovah's Witnesses services with JH, but defendant was not consistent in his religious practices. Plaintiff testified that she respected JH's guardian's wishes during the limited guardianship and did not bring him to her church. However, plaintiff involved JH in her church after the guardianship terminated. Although defendant argues that he should be favored under this factor because plaintiff's attendance at church has been inconsistent with JH, he fails to acknowledge that until November 2017, his mother was JH's guardian and was responsible for raising the child in his religion. Both parties presented evidence that they were concerned about raising JH in their respective faiths, and there is no indication from the record that JH had only one religion. The great weight of the evidence supported the court's finding that the parties were equal under factor (b).

The court found that the parties were equal under factor (c), the capacity of the parties to provide JH with necessities and medical care. Both parties testified that they would be financially able to provide JH with clothing, food, and appropriate housing. Defendant testified

that even though he had the ability to put JH on his healthcare plan since 2012 and chose to not do so due to financial reasons, he would be able to do so if he was granted custody. Plaintiff testified that she would put JH on Medicare. She also testified that in the past, she attended therapy with JH in his community and wished to continue therapy with him, but she was foreclosed from doing so because of his move to Westland. Defendant contended that he provided for JH's needs as his sole guardian while living in Westland. The great weight of the evidence also supported the court's finding that the parties were equal under factor (c).

The court found that plaintiff was favored under factor (d), the length of time the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity. This finding was supported by the great weight of the evidence. In reviewing the findings, this Court should defer to the trial court's determination of credibility. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Evidence was presented during custody proceedings that JH lived with his grandmother since 2010 and that defendant lived in Westland with his new wife and child since 2012. The court found that defendant's testimony about living with his mother and JH while commuting to work in metro Detroit was not credible. It took notice of the guardianship reports, which stated that defendant visited JH every other weekend, and it relied on defendant's testimony at the hearing to dissolve JH's guardianship, where he stated that he bought a home, remarried, and had a second child in Westland in 2007. The court found that defendant's testimony varied throughout the proceedings with regard to where he actually lived during JH's guardianship.

The court was free to credit the accuracy of the guardianship reports and disregard defendant's testimony. See *id*. We defer to the court's assessment that defendant's version of events is unlikely given the great expense and time it would take to commute by vehicle 2 1/2 hours each way, at least three days a week. The evidence supported the court's finding that Patricia, not defendant, provided a stable and satisfactory environment for JH while he was living with her.

Defendant also contends that his home in Westland is a stable and satisfactory environment for JH and that, for the sake of continuity, JH should remain in his care. However, evidence was produced before the court that demonstrated that defendant and his wife were the subject of multiple domestic-violence complaints and that DHHS had an ongoing concern about alcohol abuse in the home. On the other hand, evidence was presented that plaintiff had been in a relationship for four years with her husband, that she had an adequate home for JH to live in, that she would enroll him back in the school he previously attended, and that she previously volunteered at JH's school and attended parent-teacher conferences. Plaintiff testified that she has successfully undergone therapy and treatment for her substance-abuse issues and that she has not relapsed in her treatment. Again, the trial court was free to find plaintiff credible.

The great weight of the evidence supported the court's finding under factor (d), because the facts demonstrated that plaintiff was capable of providing a stable and satisfactory environment to JH in Clare County, which has been his home for a majority of his life. While JH resided and attended school in Westland immediately before the custody proceedings, the evidence did not clearly preponderate against the trial court's finding that returning JH to the school district and area in which he grew up would satisfy the goal to maintain his continuity.

The court also weighed factor (e), the permanence as a family unit of the proposed custodial homes, in favor of plaintiff. The same facts, such as the domestic-violence information, that supported the trial court's finding under factor (d) also supported the court's finding under factor (e).

The great weight of the evidence supported the court's finding that the parties were equal under factor (f), the moral fitness of the parties. Evidence was presented that plaintiff had a criminal history and substance-abuse issues but that she had successfully completed her probation and was undergoing counseling and participating in support groups. The record indicates that plaintiff had not been convicted of a crime since she underwent substance-abuse counseling and was jailed for driving while under the influence. The DHHS report indicated that defendant's home included alcoholism and domestic violence. The great weight of the evidence supported the court's finding under factor (f) because the evidence does not clearly preponderate in the opposite direction.

The great weight of the evidence supported the court's finding that the parties were equal under factor (g), the mental and physical health of the parties. Plaintiff testified that she was diagnosed with mental illness, had received treatment for her mental illness, and took medications and attended counseling, and that her illness did not affect her ability to parent JH. Plaintiff testified that since receiving substance-abuse therapy for alcoholism, she had not returned to drinking and attended AA meetings. Defendant testified that he uses marijuana and opiate medication occasionally to treat his physical injuries. There was no evidence presented during the proceedings that these medications affected his ability to parent JH.

Defendant has contended and contends on appeal that plaintiff has not provided sufficient evidence to support her assertion that her mental illness and substance abuse did not negatively affect her ability to parent JH. However, as previously stated, this Court will defer to the trial court's determination of credibility. *Id*. The evidence supported the trial court's findings under this factor if the trial court believed plaintiff's testimony about her treatment regime and how she successfully remained sober for a prolonged period of time.

The great weight of the evidence supported the court's finding that plaintiff was favored under factor (h), the home, school, and community record of JH. The court made its finding because defendant moved JH away from Clare County to Westland, although JH had lived in Clare County for his entire life, where he was successful in the school district and where plaintiff was active in JH's academic life. The court's aforementioned findings were supported by testimony from plaintiff about JH's academic success, and the fact that JH was abruptly moved away from the school he attended his entire life at the beginning of the 2017-2018 school year. Defendant contends that JH would be better served by staying in Westland schools because he had already begun the school year at the time of the proceedings. Plaintiff testified that she would enroll JH back in the same school district if granted physical custody of him. Before JH's move, he lived with his grandmother from 2010 until 2017. Because plaintiff testified that she would enroll JH in the same school district and lived in close proximity to where JH grew up with his grandmother, which was an environment in which he had previously demonstrated academic and community success, the court's finding under factor (h) was supported by the great weight of the evidence.

Defendant makes no argument regarding factor (i), the child's preferences. Under factor (j), the willingness of each party to facilitate a continuing parent-child relationship with the other parent, the great weight of the evidence supported the court's finding that plaintiff was favored. Evidence was presented that Patricia moved JH to defendant's home in Westland without consulting plaintiff or the court. Even if the blame for this move could be reasonably placed upon Patricia because she was JH's legal guardian at the time of the move, defendant did not alert JH's mother that JH was living with him downstate. Plaintiff testified that she learned of JH's move only after JH had already been moved. Moreover, plaintiff testified that defendant had spoken negatively and in demeaning terms about her in front of JH. Although defendant takes issue with the court's credibility assessments, we defer to such assessments. See *id*. The court's finding under factor (j) was supported by the great weight of the evidence because the evidence does not clearly preponderate in the opposite direction.

The court found that the plaintiff was favored under factor (k), the consideration of a party's history of domestic violence. Under factor (l), other considerations relevant to the court's decision, the court did not explicitly make a finding in favor of plaintiff, but found that the DHHS home study indicated that there was domestic violence in the home of defendant and his wife. It referenced DHHS reports that contained allegations of domestic violence against defendant. Given the existence of domestic-violence allegations against defendant referenced by the court, the great weight of the evidence supported the court's finding under factor (k).

Considering that the great weight of the evidence supported the court's individual findings under each factor, the court's cumulative finding that the best-interests factors weighed in favor of plaintiff was properly supported. The court did not abuse its discretion by awarding plaintiff custody of JH, which would allow JH to return to the community he had lived in and the schools he had attended for most of his life and to live in a home environment free from domestic violence and alcohol abuse. The trial court's outcome was not outside the range of principled outcomes.

Affirmed.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher