# Order

Michigan Supreme Court
Lansing, Michigan

June 11, 2021

161335

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

THOMAS J. O'BRIEN, JR.,
            Plaintiff-Appellee,

v

ANN MARIE D'ANNUNZIO,
            Defendant-Appellant.

SC:  161335
COA:  347830
Oakland   CC   Family   Division:
    2004-693882-DC

_____/

On May 5, 2021, the Court heard oral argument on the application for leave to appeal the February 27, 2020 judgment of the Court of Appeals.  On order of the Court, the application is again considered.  MCR 7.305(H)(1).  In lieu of granting leave to appeal, we VACATE the February 19, 2019 order of the Oakland Circuit Court and REMAND this case to that court for further proceedings.  We DIRECT the Oakland Circuit Court to assign a different judge to preside over further proceedings in this case.

The trial court erred by modifying the children's established custodial environment in its November 16, 2017 temporary order without first conducting an evidentiary hearing.  That order suspended the appellant's parenting time, precluded her from initiating contact with the children, and continued granting the appellee full-time parenting time.  By doing so, the order had the effect of modifying the children's established custodial environment.  Therefore, MCL 722.27(1)(c) applied,[1] and the trial court should have first conducted an evidentiary hearing.  *Grew v Knox*, 265 Mich App 333, 336 (2005) ("An evidentiary hearing is mandated before custody can be modified, even on a temporary basis.").  Despite this Court's admonishment in *Daly v Ward*, 501 Mich 897, 898 (2017), that it is "critical . . . that trial courts fully comply with MCL 722.27(1)(c) before entering an order that alters a child's established custodial environment," the trial court failed to do so.  In *Daly*, we explained that full compliance with MCL 722.27(1)(c) is necessary because "[i]n many instances, it is difficult—if not altogether impossible—to effectively remedy [an error] on appeal, and to restore the *status quo ante*, . . . without causing undue harm to the child."  *Daly*, 501 Mich at 898.  To be sure, it is impossible to effectively remedy the error in entering the November 16,

---

[1] That provision reads, in relevant part:  "The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."

2017 order when 15 months passed before an order properly based on an evidentiary hearing was issued. The trial court's February 19, 2019 final opinion and order relied on events that occurred in a custodial environment that was erroneously altered in November 2017. Therefore, we cannot conclude that the error was harmless.

On remand, the trial court shall conduct a hearing within 14 days of the date of this order to determine how the case should proceed. We further direct the trial court to expedite its consideration and resolution of this case.

We do not retain jurisdiction.

CLEMENT, J., (*concurring*).

I concur with the Court's remand order. While MCL 722.27a(12) to (14) allow for the issuance of ex parte orders concerning parenting time, the November 16, 2017 order did not, practically speaking, affect only parenting time. Though it was couched in those terms, the order changed the custodial environment by completely suspending appellant's parenting time and affording appellee full parenting time. Therefore, rather than falling under the allowance for ex parte orders as provided in MCL 722.27a(12) to (14), the November 16, 2017 order falls within the requirement in MCL 722.27(c)(1) that orders modifying the established custodial environment be entered after an evidentiary hearing. Nevertheless, the trial court ignored this procedural requirement.

It is true that an established custodial environment must be just that—established—hence why an established custodial environment exists only "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). An "appreciable time" is, of course, not a very precise phrase, and I can imagine borderline cases in which it is difficult to tell whether a custodial environment has been in place for long enough to be established. But this case is no such borderline case. I am certain that after 15 months, the children had an established custodial environment with the only parent they saw.

Moreover, I am hesitant to fault appellant for trying to resolve the dispute with appellee rather than immediately appeal the November 16, 2017 order. Even had she appealed immediately and not requested any adjournments, if the evidentiary hearings took the same amount of time as they did—almost a full year—the children's established custodial environment still would have been improperly modified by the temporary order by the time a proper opinion and order was issued.

Setting aside any effect appellant's actions might have had on the proceedings, it is important that lower courts follow the correct procedure when modifying a child's established custodial environment. As the statutory scheme reflects, doing so is serious

business. This Court has explained that the statute exemplifies a preference for stability in children's lives: "In adopting [MCL 722.27(1)(c)], the Legislature intended to minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an 'established custodial environment,' except in the most compelling cases." *Baker v Baker*, 411 Mich 567, 576-577 (1981). Therefore, we have warned trial courts how important it is to follow the requirements of MCL 722.27(1)(c). See *Daly v Ward*, 501 Mich 897, 898 (2017). But here the trial court entered a temporary order without an evidentiary hearing and then waited 15 months to issue an order that complied with the statute. By that time, the temporary order had changed the established custodial environment. Moreover, the trial court relied on events that occurred in that new established custodial environment when issuing its February 19, 2019 opinion and order.

I believe the original error in entering the November 16, 2017 order without an evidentiary hearing, and its effect on the February 19, 2019 order, justify vacating the 2019 order and remanding the case. While vacating the order will undo the custody arrangement put in place by that order, the parties remain free to file new motions regarding custody. I fully expect them to do so. I agree with Justice VIVIANO that during the course of the remand, the trial court should not disregard the children's current living situation. See *Fletcher v Fletcher*, 447 Mich 871, 889 (1994) (holding that "on remand, the court should consider up-to-date information, including the children's current and reasonable preferences, as well as the fact that the children have been living with the plaintiff during the appeal and any other changes in circumstances arising since the trial court's original custody order"). I also share his concern about the trial court's decision to completely suspend appellant's parenting time, and I join him in encouraging the trial court to facilitate the children's redevelopment of a relationship with appellant. I believe the majority's order lays the groundwork for these steps, so I concur in the vacatur and remand.

I also concur in the majority's decision to reassign the case to a different judge. For the reasons stated in Judge GLEICHER's dissent, I believe the original judge will have a difficult time setting aside her previous opinions; and because the error in entering the November 16, 2017 order had such longstanding effects, I think reassignment is necessary to preserve the appearance of justice. In light of those concerns, I do not believe reassignment will cause excessive waste. *Bayati v Bayati*, 264 Mich App 595, 603 (2004).

VIVIANO, J. (*concurring in part and dissenting in part*).

I agree with much of the Court's order, so far as its reasoning can be discerned, but I dissent from its decision to reassign this case to another judge on remand and I write further to address its confusing and seemingly incomplete remedy of vacating the trial court's custody order. In fashioning this relief, the Court fails to give any real guidance

on the effect of its order and what the trial court should do next. I would follow our precedent and remand for reevaluation while the status quo is maintained.

Plaintiff-father and defendant-mother shared custody of their two minor children for years without issue, but in 2017, the relationship between the teenage children and defendant began to break down. On November 6, 2017, after several instances in which police officers were called to intervene in confrontations between defendant and the children, plaintiff filed an ex parte motion to suspend defendant's parenting time and to grant him sole physical and legal custody of the children. The trial court granted that motion and, after holding a hearing in which no evidence was presented, decided on November 16, 2017, to continue the previous ex parte order as a temporary order. At the time plaintiff filed his ex parte motion, plaintiff and defendant shared custody and parenting time; after the court granted his motion, plaintiff alone had custody and parenting time. The court's decision changed the children's established custodial environment, i.e., the environment in which there is a person to whom the children looked for "guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). But the trial court did not complete the evidentiary hearing required by that subsection until October 2018 and did not enter a final order granting plaintiff sole physical and legal custody until February 2019. That order also suspended defendant's parenting time and conditioned future contact between defendant and the children on whether the children wished to reinstate contact with defendant.

I agree with the majority that the trial court erred by entering a series of orders that had the effect over time of modifying the children's established custodial environment without first conducting an evidentiary hearing. See *Daly v Ward*, 501 Mich 897 (2017). I also believe that the trial court erred by suspending defendant's parenting time for the duration of the proceedings and conditioning future contact on the children's wishes. The purpose of parenting time is "to foster a strong relationship between the child and the child's parents." *Shade v Wright*, 291 Mich App 17, 29 (2010). We presume that it is in the children's best interests to have a strong relationship with both parents. MCL 722.27a(1). Moreover, although the child's preference is a consideration, it is only one best-interest factor among many. See MCL 722.23; *Treutle v Treutle*, 197 Mich App 690, 694-695 (1992) ("The child's preference does not automatically outweigh the other factors, but is only one element evaluated to determine the best interests of the child.").

The majority here glosses over the next step of determining whether these errors were harmless. See *Fletcher v Fletcher*, 447 Mich 871, 889 (1994). In finding that they were harmless, the Court of Appeals majority engaged in a standard assessment of harmlessness. It noted that the trial court's later decision in 2019 purported to assess the issue of custody from the perspective of the circumstances existing at the time of the first order in November 2017. See *O'Brien v D'Annunzio*, unpublished per curiam opinion of the Court of Appeals, issued February 27, 2020 (Docket No. 347830), p 5. This might be enough to show harmlessness if it could convince a reviewing court that the initial error

in changing the custodial environment, along with the circumstances resulting from that change, played no role in the trial court's later ratification of its initial improper decision. In those circumstances, the trial court might demonstrate that it would have reached the same decision irrespective of the error in failing to hold an earlier hearing.

But it is unclear whether such a demonstration will always be possible in this context. As the Court of Appeals majority admits, the trial court's later opinion "references and relies upon a number of events that occurred after it temporarily granted plaintiff physical custody . . . ." *Id.* And as the Court of Appeals dissent noted, the development and assessment of evidence is a critical part in combating biases that might creep into the decision-making process. *Id.* (GLEICHER, J., dissenting) at 3. Once initial impressions are formed and conclusions reached, decision-makers will naturally look for evidence that confirms the decision already made. See Kahneman, *Thinking, Fast and Slow* (New York: Farrar, Straus and Giroux, 2011), p 81. In addition, the consequences of the decision here were severe: the children were removed from defendant's home and were prevented from seeing her without supervision. *O'Brien* (GLEICHER, J., dissenting), unpub op at 4. As the dissent observed, this likely had inextricable effects of its own, especially on the children's relationship with defendant. *Id.* Although not every similar error in this setting will be harmful, here the trial court's reliance on intervening facts, the lengthy delay before it attempted to rectify its mistake, and the complete separation of the children and the mother make the errors harmful.

But finding an error, even a harmful one, does not end the analysis. Custody cases are perhaps unique in that remedying the harm to the wronged party risks causing even greater harm to the children caught in the middle. As this Court has recognized, "In many instances, it is difficult—if not altogether impossible—to effectively remedy on appeal, and to restore the *status quo ante*, following an erroneous order altering a child's established custodial environment without causing undue harm to the child." *Daly*, 501 Mich at 898. As a result, an error in "entering an order that alters a child's established custodial environment . . . may have lasting consequences yet effectively be irreversible." *Id.*

Where I part company with the majority is in its decision to remand the case for further proceedings in front of a new judge unacquainted with the parties or the case only months before the children turn 18 and the case must conclude.[2] In addition, the legal

---

[2] The majority fails to provide any justification for its decision to remand this case to a new judge—a decision that I think is unwarranted and unwise at this stage of the proceedings. See, e.g., *Bayati v Bayati*, 264 Mich App 595, 603 (2004) (noting that an appellate court may remand a case to a different judge "if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication.").

effect of the majority's order to vacate is not apparent. It would seem, for example, that we are not simply inviting the trial court to revisit the conclusions it reached after the evidentiary hearing. One possible reading of the majority's order is that the parties and the children will return to the status quo as it existed before plaintiff was granted full-time parenting time on November 6, 2017. Under this scenario, the children would be thrust back to the physical custody of their mother despite having had virtually no contact with her for nearly 3½ years. Such a resolution would do nothing to meaningfully address the children's antagonism toward their mother but instead would seem primed to create a volatile situation. It is hard to imagine how this abrupt change would be in the children's best interests.

A better reading of the majority's order—one that is at least consistent with our precedent in this area—is that it allows for a more delicate remedy to balance the interests of the parties and the children. We have, in fact, prescribed such an approach for appellate courts upon determining that a harmful error was made in a custody determination. In *Fletcher*, 447 Mich at 889, we held that after finding that an error was not harmless, "an appellate court should remand the case for reevaluation . . . ." "[O]n remand," we continued, "the court should consider up-to-date information, including the children's current and reasonable preferences, as well as the fact that the children have been living with the plaintiff during the appeal and any other changes in circumstances arising since the trial court's original custody order." *Id*. This course of action does not require vacatur of the trial court order. Indeed, we rejected a rule that would allow an appellate court to order a "peremptory change of custody" precisely because that relief would not "secure custody decisions that are in the best interests of the child." *Id*.

Instead of the majority's confusing order, I would eliminate the guesswork and expressly order a *Fletcher* remand so that a reevaluation could immediately take place while the status quo is maintained. This would provide stability for the children while giving the trial court the flexibility to quickly address what I find to be the most troubling error below: the decision to completely suspend defendant's parenting time and to condition future parenting time on the children's wishes. Because time is short and the children's relationship with the mother is presumed to be in their best interests, I would explicitly order the trial court to conduct an expedited hearing on parenting time as a first step in the *Fletcher* reevaluation and to make every effort to encourage the children to develop a healthy relationship with their mother as they enter adulthood. See, e.g., *Ludwig v Ludwig*, 501 Mich 1075, 1075 (2018) (remanding for a hearing on whether reunification was in the children's best interests when the trial court's order "left up to the unfettered discretion of the [children's] therapists the 'frequency, duration, and method' of any additional contact between the defendant and the children") (citation omitted).

For these reasons, I concur in part and dissent in part.

ZAHRA, J., (*dissenting*).

I respectfully dissent from the Court's order vacating the family court's February 19, 2019 final order that is based on the family court's November 16, 2017 temporary order awarding appellee full parenting time without first conducting an evidentiary hearing. Instead, I would deny appellant's application in this case.

The rules are plainly stated. Both the Child Custody Act, MCL 722.21 *et seq*., and the court rules expressly permit an ex parte order to be entered without a hearing. MCL 722.27a(12) expressly provides that a "parent may seek an ex parte interim order concerning parenting time." "If the opposing party objects to the ex parte interim order, he or she shall file with the clerk of the court within 14 days after receiving notice of the order a written objection . . . ." MCL 722.27a(13). If there is an objection, "the friend of the court shall attempt to resolve the dispute within 14 days after receiving it." MCL 722.27a(14). Then, "[i]f the opposing party wishes to proceed without assistance of counsel, the friend of the court shall schedule a hearing with the court that shall be held within 21 days after the filing of the motion. If the opposing party files a motion to modify or rescind the ex parte interim order and requests a hearing, the court shall resolve the dispute within 28 days after the hearing is requested." *Id*. The notice provided for an ex parte order clearly states that a written objection must be filed within 14 days.

The applicable court rules largely mirror the above statutes. See MCR 3.207(B)(1) through (5), (6)(a). The relevant statutes and court rules do not require a hearing before a family court suspends a party's parenting time. Together, they only provide for a hearing within 21 days after the objection to any change in parenting time is received.

I acknowledge that MCL 722.27(1)(c) provides that "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." I also acknowledge that *Daly v Ward*, 501 Mich 897, 898 (2017), cautions a family court not to enter an ex parte order "if it also alters the child's established custodial environment without first making the findings required by MCL 722.27(1)(c)." Importantly, though, MCL 722.27(1)(c) provides that "[t]he custodial environment of a child is established if over an *appreciable time* the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." In my view, the above cited statutes and court rules contemplate a scheme in which timely adherence prevents an ex parte or temporary order from accruing the "appreciable time" required to alter the child's custodial environment. In this case, appellant did not seek to appeal the November 16, 2017 temporary order awarding appellee full parenting time until filing an emergency appeal on March 29, 2018. Instead, appellant first requested an adjournment at a November 15, 2017 hearing, and then on January 10, 2018 filed a motion seeking the

restoration of her parenting time. At a January 17, 2018 hearing on the motion, the family court acknowledged that appellant had made "a very good argument." The court set a hearing to be held two days later:

> I'm going to set [a] hearing on Friday afternoon. I don't care what you guys have, you're coming in here Friday afternoon and I'm going to have a hearing on parenting time and custody.
>
> . . . I'm clearing my docket . . . and I know there's not going to be twenty-five days of discovery, you're going to put your parties on the stand, you're going to tell me what's going on and I'm going to make a decision.

But on that date, appellant, with appellee's consent, requested an adjournment until mid-March and entered into a stipulated order on January 26, 2018 to try to resolve the dispute in the meantime. An evidentiary hearing began on March 20, 2018. It was only after the evidentiary hearing had begun that appellant filed an emergency appeal on March 29, 2018. At this point, even if the Court of Appeals or this Court were to conclude that the November 16, 2017 order was entered in error, the remedy would have been to vacate the order and remand for an evidentiary hearing that was currently taking place. In sum, I would conclude that appellant's failure to appeal the November 16, 2017 order and her decision to instead request several adjournments of the evidentiary hearing renders her claim presented in this appeal either waived or harmless. I would deny appellant's application.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 11, 2021



t0608

Clerk