BAKER v BAKER

Docket No. 63660. Argued May 6, 1980 (Calendar No. 6).—Decided
    September 1, 1981.

Phillip P. Baker brought an action for divorce in the Alpena
    Circuit Court against Tanny L. Baker, praying that the custody
    of their minor children, Sharyll A. Baker and Arthur L. Baker,
    be awarded jointly to the parties. At an informal conference in
    the office of the Friend of the Court the plaintiff and defendant
    agreed that Mrs. Baker and the children would establish a new
    home in Colorado. Sharyll has remained with her mother in
    Colorado without objection by Mr. Baker, but after a month
    and a half, Mr. Baker went to Colorado and returned to
    Michigan with Arthur. After trial of the divorce action, the
    circuit court, Philip J. Glennie, J., decided that under the Child
    Custody Act the mother had a "clear preference" in the matter
    of custody because she had been the "guiding force" in raising
    the children, over the father's argument that the child's estab-
    lished custodial environment within the meaning of the act was
    in Alpena. The court granted a judgment of divorce giving
    custody of both children to the mother and reasonable rights of
    visitation to the father. The Court of Appeals, R. B. Burns, P.J.,
    and D. E. Holbrook and Burdick, JJ., affirmed in an unpub-
    lished per curiam opinion (Docket No. 43878). Plaintiff appeals.

In an opinion by Justice Ryan, joined by Chief Justice Cole-
    man and Justices Kavanagh, Levin, Fitzgerald, and Moody, the
    Supreme Court *held:*

The award of custody is affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error §§ 76, 136.
[2, 6, 8] 24 Am Jur 2d, Divorce and Separation §§ 783, 820.
    42 Am Jur 2d, Infants §§ 43, 57.
[3] 24 Am Jur 2d, Divorce and Separation § 819.
[4] 24 Am Jur 2d, Divorce and Separation § 783.
[5, 9] 24 Am Jur 2d, Divorce and Separation § 783.
    43 Am Jur 2d, Infants § 43.
[7] 24 Am Jur 2d, Divorce and Separation § 791.
[8] 24 Am Jur 2d, Divorce § 784.
    42 Am Jur 2d, Infants §§ 44-47.

1. Review by the Supreme Court of the trial court's determination in this case is *de novo;* however, the Court is bound by the provisions of the Child Custody Act. Therefore, the Supreme Court must affirm the judgment granting custody of Arthur to Mrs. Baker unless it finds that the trial court committed clear legal error in making the order, made findings of fact against the great weight of the evidence, or committed a palpable abuse of discretion.

2. The Child Custody Act attempts to standardize the criteria for resolving child custody cases by declaring that the ultimate standard for the award of custody, the best interests of the child, is to be determined by evaluation and consideration of ten specifically identified factors. The provision of the statute forbidding a change of the established custodial environment in the absence of clear and convincing evidence was intended to minimize the prospect of unwarranted and disruptive orders changing custody and to erect a barrier against removal of a child from an established custodial environment, except in the most compelling cases. The statute also limits the power of an appellate court to disturb the decision of the trial court.

3. Absent the existence of an established custodial environment the trial judge was free to award custody of Arthur either to his mother or his father simply by determining the child's best interests as defined in the act. Therefore, to determine whether the trial court's authority to order a change of custody depended upon a showing by "clear and convincing evidence", as opposed to a mere preponderance of the evidence, the first question is whether the prerequisite "established custodial environment" existed. Certainly, the mere issuance of an interim order of custody in this case did not establish a custodial environment. Such an environment depends instead on a custodial relationship of a significant duration in which Arthur was provided the parental care, discipline, love, guidance, and attention appropriate to his age and individual needs, and a relationship between the custodian and child marked by qualities of security, stability, and permanence. In this case it is certainly true that Arthur's long-term contacts and associations in Alpena with a single school, familiar playmates in a familiar neighborhood, close familial ties, regular visits with his grandparents, and continuing participation in a neighborhood hockey program contributed importantly to a custodial environment which was fortified by an atmosphere in his home provided by two loving parents over an appreciable time. That environment, however, was ultimately destroyed by the breakup of the parents' marriage and the dissolution of the family. The re-

peated changes of custody and residence during the breakup, with the necessarily attendant emotional effects, destroyed the previously established custodial environment in which the boy was living with his family in Alpena and precluded the establishment of a new one, at least until after the trial. Arthur's contacts with the community and familiar associations in Alpena were not sufficient to preserve the custodial environment once the family dissolved and the boy entered into a new custodial relationship with his father alone, with a radically altered life-style in a new home. At the time of trial, there had been no appreciable time when the child naturally looked to his father *alone* for guidance, discipline, the necessities of life, and parental comfort in a stable, settled atmosphere in order that an "established custodial environment" could exist.

4. In the absence of an established custodial environment, the trial court's custody decision was not governed by the "clear and convincing" evidence standard. The court's duty was to decide, by a preponderance of the evidence, what custodial arrangement was dictated by the child's best interests as defined in the statute. The standards of the Child Custody Act for deciding a custody dispute, taken as a whole, fully embrace the significant contacts which the child has established during his life in a certain community and should be considered by the trial court. It is evident that the trial court did not overlook the significant long-term community contacts which Arthur had established in Alpena. Neither the Child Custody Act nor the court rule requiring special findings of fact in non-jury cases requires that in custody cases the court comment upon every matter in evidence or declare acceptance or rejection of every proposition argued. The trial court correctly observed that it was required to consider, evaluate, and determine the factors listed in the Child Custody Act to decide the matter, and proceeded to address the subject matter of each of them. The determination of the child's best interests was fully supported by the evidence. The conclusion that the child's stated preference to live with his father should be given little weight because it was unduly influenced by the father and inconsistent with his own best interests is one clearly within the discretion of the trial judge to make and is supported by the evidence.

5. There are no grounds to disturb the determination that the mother has been the guiding force in the care, education, and discipline of the child and that, given the breakdown of the parties' marriage and its disruptive effect on the child's life, Arthur's best interests dictated placement in the custody of his mother. The choice in this case must be made among unsatis-

factory alternatives, but it does not turn upon a determination of which parent is more loving. It turns upon the best judgment possible as to which of two single-parent custodial arrangements will serve the child's best interests. The decision that Arthur's best interests demand that custody be awarded to the mother is not against the great weight of the evidence. The erroneous factual findings of the trial court regarding the validity of the *ex parte* interim order of custody and the trial court's obviously inadvertent misstatement of the child's age were not significant factors in the trial court's findings.

Affirmed.

Justice Williams, concurring, would affirm because of the disruption which the case has already caused in the life of the child, but he was not confident that the trial judge made the correct decision. It is not clear that the custodial environment with the mother would be better than that with the father. Further, he did not agree that the separation of the parents and the divorce destroyed the pre-separation environment. Certainly the child was affected, but his ties with the community remained and should not be cast aside lightly.

### OPINION OF THE COURT

1. PARENT AND CHILD — CHILD CUSTODY ACT — APPEAL.

Review by the Supreme Court of the trial court's determination in a child custody case is *de novo,* but the Court is bound by the provisions of the Child Custody Act, and must affirm a judgment granting custody of a child to one of the parents unless it finds that the trial court committed clear legal error in making the decision, made findings of fact against the great weight of the evidence, or committed a palpable abuse of discretion (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY ACT — LEGISLATIVE PURPOSE — CHANGE OF CUSTODY.

The Child Custody Act attempts to standardize the criteria for resolving child custody cases by declaring that the ultimate standard for the award of custody, *i.e.,* the best interest of the child, is to be determined by evaluation and consideration of ten specifically identified factors; the Legislature also intended to minimize the prospect of unwarranted and disruptive orders changing custody and to erect a barrier against removal of a child from an established custodial environment, except in the most compelling cases (MCL 722.21 *et seq.;* MSA 25.312[1] *et seq.).*

3. PARENT AND CHILD — CHILD CUSTODY ACT — CHANGE OF CUSTODY
   — BURDEN OF PROOF.

The Child Custody Act provides that an established custodial
environment of a child may not be changed by the trial court
unless there is presented clear and convincing evidence that
the change is in the best interest of the child; absent a showing
of an established custodial environment the trial judge is free
to award custody of the child who was living with one parent at
the time of trial either to his mother or his father simply by
determining, upon a showing of a preponderance of the evi-
dence, that the child's best interests called for a change of
custody (MCL 722.27; MSA 25.312[7]).

4. PARENT AND CHILD — CHILD CUSTODY ACT — CUSTODIAL ENVIRON-
   MENT — WORDS AND PHRASES.

An "established custodial environment" under the Child Custody
Act depends on a custodial relationship of a significant dura-
tion in which the child is provided the parental care, discipline,
love, guidance, and attention appropriate to his age and indi-
vidual needs, and a relationship between the custodian and
child which is marked by qualities of security, stability, and
permanence (MCL 722.27; MSA 25.312[7]).

5. PARENT AND CHILD — CHILD CUSTODY ACT — CUSTODIAL ENVIRON-
   MENT.

The contacts of a child with the community and familiar associa-
tions in the town in Michigan where he was raised by his
mother and father with his sister are not sufficient to preserve
the established custodial environment where the family is
dissolved and the child enters into a new custodial relation
with his father alone, with a radically altered life in a new
home, after repeated changes in custody between the child's
parents and changes of residence between Michigan and Colo-
rado over a five-month period (MCL 722.27; MSA 25.312[7]).

6. PARENT AND CHILD — CHILD CUSTODY ACT — FINDINGS OF FACT —
   CUSTODIAL ENVIRONMENT.

The standards of the Child Custody Act for deciding a custody
dispute, taken as a whole, fully embrace the significant long-
term community contacts which the child has established dur-
ing his life in a certain community and should be considered by
the trial court (MCL 722.23; MSA 25.312[3]).

7. PARENT AND CHILD — CHILD CUSTODY ACT — FINDINGS OF FACT.

Neither the Child Custody Act nor the General Court Rules
require a trial court deciding a child custody dispute to com-
ment upon every matter in evidence or declare its acceptance

or rejection of every proposition argued by the parties (MCL 722.21 *et seq.;* MSA 25.312[1] *et seq.;* GCR 1963, 517.1).

8. Parent and Child — Child Custody Act — Best Interest of Child.

A trial court's determination in a divorce case that the best interest of a child of the parties required the award of custody to his mother rather than to his father is not against the great weight of the evidence where the court considered the factors required by the Child Custody Act to determine the custody dispute, decided to give the child's preference to live with his father little weight, finding that it was unduly influenced by the father and inconsistent with the child's best interest, and found that the mother had been the guiding force in the care, education and discipline of the child until the breakdown of the parties' marriage disrupted the child's life with repeated changes in custody and residence over a five-month period (MCL 722.23; MSA 25.312[3]).

Dissenting Opinion by Williams, J.

9. Parent and Child — Child Custody Act — Custodial Environment — Words and Phrases.

*The ties which an 11-year-old child has with the community where he was raised, such as his school, playmates, family and participation in extra-curricular activities, are especially important in his life when his parents are separated or divorced; therefore, they should not be cast aside lightly by a trial court in deciding whether the child has an "established custodial environment" in that community under the Child Custody Act (MCL 722.27; MSA 25.312[7]).*

*Sumpter & Loznak, P.C.* (by *Peter J. Riebschleger*), for plaintiff.

*Gillard, Bauer & Mazrum* for defendant.

Ryan, J. This is a child custody case whose subject is an 11-year-old boy, the son of divorced parents.

Our order granting leave to appeal obligates us to answer two questions:

1. Whether, on the facts of this case, there existed at the time of trial an established custodial

environment from which the trial court was by statute forbidden to remove the minor child, absent clear and convincing evidence that the child's best interests required a change of custody; and

2. "[W]hether, under the facts of this case, the trial court erroneously overlooked the importance of long-term community contacts as a factor contributing to a finding of 'custodial environment'." 407 Mich 947.

We answer both questions in the negative and affirm the judgment of the Court of Appeals which affirmed the decision of the trial court to award custody of the child of the parties to appellee.

Our decision involves consideration of the interplay of three provisions of the Child Custody Act:[1] §§ 3, 7(c) and 8.

It is important to note at the outset that while our review of the trial court's custody determination in this case is *de novo, Hensley v Hensley,* 357 Mich 3; 97 NW2d 615 (1959), we are nevertheless bound by § 8 of the Child Custody Act, which states:

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court *shall be affirmed on appeal* unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a *clear legal error* on a major issue."[2] (Emphasis added.)

We understand that provision to require us to affirm the trial judge's determination that on this record the best interests of the child involved

---

[1] MCL 722.21-722.29; MSA 25.312(1)-25.312(9). Subsequent to the trial in this case the Child Custody Act was amended by 1980 PA 161 and 1980 PA 434. The amendments do not affect this litigation.

[2] MCL 722.28; MSA 25.312(8).

would be best served by ordering him placed in the custody of appellee unless we find that the trial court committed clear legal error in making that order, made findings of fact against the great weight of the evidence, or committed a palpable abuse of discretion. For the reasons stated hereafter, we conclude he did not.

I

Appellee, Tanny Baker, was first married in November, 1967. A child, Sharyll Anne, was born of the marriage, which ended in divorce. Appellee then married appellant Phillip Baker and on August 5, 1970, a son, Arthur Lee, whose custody is at issue before us, was born of that marriage. Sharyll Anne was later adopted by appellant. From the time of Arthur's birth and until June, 1978, the two children lived with their parents in the marital home in the area of Alpena, Michigan.

On June 18, 1978, Mrs. Baker took the two children to Colorado for a vacation with her parents. One month later she and the children returned to Michigan, and she informed her husband that she wanted a divorce. On July 21, 1978, Mr. Baker filed a complaint for divorce in the Alpena Circuit Court. No order for custody of either of the children was entered at that time. Later, at an informal conference held at the office of the Friend of the Court, the parties agreed that Mrs. Baker and both children would return to Colorado where they would establish a new home. In accordance with that understanding, Mrs. Baker and the two children moved to Buena Vista, Colorado, on July 31, 1978, and took up residence.

On September 12, 1978, Mr. Baker appeared in Colorado unannounced, physically removed his son Arthur from Mrs. Baker's home and immediately

returned to Michigan with the child. He had not consulted the boy's mother in advance or advised her of his intention to remove the child from her custody. Sharyll Anne remained with her mother in Colorado.

On September 16, 1978, Mr. Baker obtained from the circuit court in Alpena an *ex parte* interim order for custody of Arthur. He made no request for custody of Sharyll Anne. After a contested hearing on October 3, 1978, the court ordered that custody with Mr. Baker be continued. Arthur remained in Alpena with his father until the trial.

The trial was held on November 2, 1978. At its conclusion the court granted a divorce and awarded custody of both children to the appellee. As part of the property division, the court directed appellant to repay the sum of $4,800 to appellee's parents for what was characterized as an "advancement" made to the parties during their marriage.[3]

## II

For decades the trial and appellate judiciary of this state struggled with the delicate task of resolving child custody disputes, a task made both frustrating and unsatisfactory by the need to apply inexact standards of largely unproven significance to factual scenarios of limitless variation. Courts were required to evaluate a plethora of sociological, economic, and psychological data in an effort to reach custody decisions intended, in

---

[3] In his brief on appeal to this Court, appellant raises, for the first time, the issue whether the trial court had jurisdiction to order him to repay the $4,800 to appellee's parents. Because this issue was neither raised in the application for leave to appeal nor included within our order granting leave, we will not address it. GCR 1963, 853.2(1)(a).

the last analysis, to serve the affected child's best interests. Predictably, the myriad factors evaluated by trial courts in child custody disputes were given uneven consideration and only such significance as a particular judicial fact-finder deemed appropriate in the exercise of his own, virtually unfettered, discretion.[4] The standards for determining the child's best interests were essentially subjective.

By enacting the Child Custody Act of 1970, and particularly § 3 thereof, the Legislature attempted, among other things, to standardize the criteria for resolving child custody cases by declaring that the ultimate standard for the award of custody—the best interests of the child—is to be determined by evaluation and consideration of ten specifically identified factors.[5] In adopting § 7(c) of the act, the

---

[4] MCL 722.541; MSA 25.311, first enacted in 1873 and repealed in 1970, provided:

"That in case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care and custody of all such children under the age of 12 years, and the father of such children shall be entitled to the care and custody of all such children of the age of 12 years or over: Provided, That any probate court or any court of competent jurisdiction, may, on petition and hearing thereof, make and enforce such order or orders as it may deem just and proper as to the care and custody of such minor children, excepting in cases where an order or decree may have been made by a court in chancery, regarding such children: And provided further, That nothing in this act shall prevent any court of competent jurisdiction from making and enforcing any such order or orders as it may deem just and proper as to the care and custody of such minor children in the same manner and with like effect as it could if this act had not been passed."

The provision of the statute giving a mother custody of a child under the age of 12 and the father custody of a child 12 and over was historically regarded as a mere guideline, in no way inhibiting the power of the court to make such award of custody as it deemed in the child's best interest. *Mault v Elliott,* 329 Mich 544; 46 NW2d 373 (1951). Just what constituted a child's "best interests" depended upon the individual fact-finder and varied from case to case.

[5] At the time of trial, MCL 722.23; MSA 25.312(3) provided:

" 'Best interests of the child' means the sum total of the following factors to be considered, evaluated and determined by the court:

Legislature intended to minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an "established custodial environment", except in the most compelling cases. Section 7(c) provides:

"The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the *established custodial environment* of a child unless there is presented *clear and convincing evidence* that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in such environment for guidance, discipline, the necessities of life and parental comfort. The age of the child, the physical environment and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." (Emphasis added.)

Complementing the foregoing provision is § 8, quoted *supra,* which limits the power of an appellate court to disturb a trial court's custody decision

---

"(a) The love, affection and other emotional ties existing between the competing parties and the child.

"(b) The capacity and disposition of competing parties to give the child love, affection and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

"(c) The capacity and disposition of competing parties to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

"(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

"(e) The permanence, as a family unit, of the existing or proposed custodial home.

"(f) The moral fitness of the competing parties.

"(g) The mental and physical health of the competing parties.

"(h) The home, school and community record of the child.

"(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

"(j) Any other factor considered by the court to be relevant to a particular child custody dispute."

to those instances in which the "trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error".

## III

Appellant claims the trial court committed clear legal error in failing to apply the clear and convincing evidence standard of § 7(c) to the determination whether, at the time of trial, young Arthur Baker's best interests required a change of custody to appellee. He also claims that even if the clear and convincing evidence standard of § 7(c) was not applicable in this case, the trial court's finding that the best interests of the child required a change of custody was nevertheless contrary to the great weight of evidence. Specifically, appellant argues that the evidence shows that from the time of Arthur's birth until the date of trial, November 2, 1978, with the exception of "two occasions of one and one and one-half months, respectively", the boy was living in an "established custodial environment" in Alpena within the meaning of § 7(c) of the act. Consequently, he maintains, the court was forbidden to order a change of custody to appellee unless it first found, by "clear and convincing" evidence, that the boy's best interests required that he be taken from his father's care and sent to live with his mother in Colorado.

Appellee contends, on the other hand, that the child was not living in an "established custodial environment" with appellant at any time, as that expression is used in § 7(c); that in resolving the custody dispute at trial the court was bound only to determine the child's best interests; and that the court's custody decision was factually and legally correct.

## IV

It is clear that absent the existence of an "established custodial environment", the trial judge was free to award custody of the boy either to his mother or to his father simply by determining the child's best interests, as that standard is defined in § 3 of the act. Therefore, to determine whether the trial court's authority to order a change of custody in November, 1978, depended upon a showing by "clear and convincing evidence", as opposed to a mere preponderance of evidence that the child's best interests called for a change of custody, we must first decide whether the prerequisite "established custodial environment" existed.

We are provided a measure of legislative guidance as to the meaning of an "established custodial environment" by § 7(c) of the act which we repeat here for ease of reference:

"The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in such environment for guidance, discipline, the necessities of life and parental comfort. The age of the child, the physical environment and the inclination of the custodian and the child as to permanency of the relationship shall also be considered."

Certainly the orders of custody that entered on September 16 and October 3, 1978, did not, of themselves, establish the custodial environment with which we are concerned here. Such an environment depended instead upon a custodial relationship of a significant duration in which Arthur was provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the

relationship between the custodian and the child is marked by qualities of security, stability and permanence.

Appellant argues that Arthur was living in just such a custodial environment in Alpena at the time of the trial and had been from the day he was born. Our attention is invited to the fact that in Alpena, unlike Colorado, Arthur's custodial environment included a number of long-term community contacts.

They included, among other things, attendance at a single school, association with familiar playmates in a familiar neighborhood, close familial ties, regular visits with grandparents, and continuing participation in the neighborhood hockey program. It is certainly true that these contacts and associations contributed importantly to the custodial environment in which Arthur lived with his parents and sister in the family home in Alpena. Moreover, there are indications in the record that such community contacts were fortified by an atmosphere in the home of love, guidance, discipline, parental comfort, psychological stability and a secure family life provided by two loving parents over an appreciable period of time.

That environment began to deteriorate, however, with the disruptive events of the summer of 1978, and it was ultimately destroyed by the breakup of the parents' marriage and the dissolution of the family.

The shifting back and forth between Buena Vista, Colorado, and Alpena, Michigan, during the five and one-half months from June to November, 1978, saw the child living with his mother in Colorado for one month, his mother and father in the family home in Alpena for a week, his mother in Colorado for six weeks, and his father in the

paternal grandparents' residence in Alpena for another seven weeks. Certainly those repeated custodial changes and geographical moves, with the necessarily attendant emotional implications, destroyed the previously established custodial environment in which the boy was living and precluded the establishment of a new one, at least until after the trial.

While it is true that on September 12, 1978, Arthur was returned to the Alpena area where he was born and raised and on September 16 was placed in his father's legal custody by an *ex parte* interim order, Arthur did not return to the home or the settled environment from which he was taken in June. Instead, he was introduced to a new living arrangement with his father, but not his mother and sister, and not in the home he left in June but in the home of his paternal grandparents. Furthermore, it was inevitable that, whatever the outcome of the custody dispute, another change of residence would be necessary because of appellant's stated intention to find a new residence for himself and the boy if he were awarded custody.[6]

Certainly, whatever significance Arthur's community contacts and familiar associations in Alpena may have had in contributing to his "established custodial environment" prior to June, 1978, they were not, by their nature, sufficient to preserve that environment once the family unit

---

[6] At the hearing on temporary custody, upon cross-examination by counsel for appellee, Mr. Baker testified as follows:

"*Q. [By Mr. Gillard]:* Mr. Baker, are you presently residing with your parents?

"*A.* On a temporary basis, yes.

"*Q.* Have you made any arrangements to establish your own residence?

"*A.* No. But I intend to establish residence as soon as a final decision is made on this custody situation."

dissolved and the boy entered into a new custodial relationship with his father alone, in a radically altered lifestyle in a new home.

We conclude that at the time of trial there had been no "appreciable time [during which] the child naturally look[ed]" to his father *alone* "for guidance, discipline, the necessities of life and parental comfort" in a stable, settled atmosphere in order that an "established custodial environment" within the meaning of § 7(c) could exist.

That being so, the trial court's custody decision was not governed by the "clear and convincing" evidence standard of § 7(c) but rather by the duty to decide, by a preponderance of the evidence, what custodial arrangement was dictated by the child's best interests as defined in § 3 of the act.

V

As is explained more fully in Part VI, *infra,* the trial judge, in his opinion concerning custody of Arthur, carefully tracked the litany of criteria described in § 3[7] of the custody act as mandatory considerations in determining the child's best interest and evaluated each of them separately. "Long-term community contacts" is not, in express terms, one of them. Nevertheless, the ten criteria, taken as a whole, fully embrace the more essential long-term community contacts to which the appellant's claim of error makes reference. Section 3(d) concerns "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity"; § 3(e) addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home"; and § 3(h) refers to

_____
[7] See fn 5, *supra.*

"[t]he home, school and community record of the child".

It is evident that in addressing each of the foregoing factors, as well as the others listed in § 3 of the act, the trial court did not overlook the significant long-term community contacts this, then eight-year-old, child had established in Alpena.

Certainly there are other community contacts Arthur established which the trial court might have specifically addressed, as we have, such as attendance at the same school, contact with old playmates, the children's hockey program, visits to grandparents, and others. But the trial court's failure to speak to each of the myriad factors which could be characterized as community contacts does not suggest that all of them are relevant or that the relevant among them were overlooked.

Neither the mandate of the Child Custody Act nor our requirement that in non-jury cases the "court shall find the facts specially and state separately its conclusions of law thereon"[8] requires in cases involving child custody decisions that the court comment upon every matter in evidence or declare acceptance or rejection of every proposition argued. To the specific question whether, in deciding the custody issue, the trial judge "overlooked the importance of long-term community contacts as a factor contributing to a finding of 'custodial environment'", we answer that he did not.

More important, for the reasons stated in Part IV, *supra,* we do not think those factors were determinative of the existence of the established custodial environment material to this case.

---

[8] GCR 1963, 517.1.

## VI

Appellant contends that even if the trial court was not bound by the clear and convincing evidence standard of § 7(c), it erred in awarding custody of Arthur to appellee because the finding that the child's best interests required his placement in the custody of his mother was contrary to the great weight of the evidence.

In his written opinion, the trial judge acknowledged that determination of the child's best interests was governed by § 3.[9] He stated:

"The Child Custody Act, [MCL 722.23;] MSA 25.312(3), is controlling. Section 3 defines best interests of children and lists those factors which a court must consider in deciding which of several competing custodial arrangements would best serve the interests of the children."

The trial judge then went on to address the requirements of the statute, making explicit reference to the factors described in subparagraphs (a), (c), (d), (f), (g) and (h) by letter name and discussing the fashion in which the evidence in the case related to each of the factors. While not specifically referring to subparagraphs (b), (e), (i) and (j) by name, the court nevertheless addressed the subject matter of each of those factors *seriatim* and articulated their application to the facts before the court.[10]

The trial court correctly observed that it was required to consider, evaluate and determine the factors delineated in subparagraphs (a) through (j) of § 3 in determining the child's best interests, as

---

[9] See fn 5, *supra*.

[10] Opinion of the trial court, reprinted in appellant's appendix, pp 35a-38a.

the governing standard for its custody order. While on *de novo* review we cannot say that the totality of the factors overwhelmingly indicated that the child's best interests required the award of custody to one parent rather than the other, we are persuaded that the court's determination of the child's best interests was fully supported in the evidence.

The main thrust of appellant's argument that the custody order was contrary to the great weight of the evidence is that the trial court summarily dismissed the child's preference to live with his father. We find, from a careful examination of the record, that the trial court did consider the child's preference but decided to give it little weight, finding that the boy's stated preference was unduly influenced by appellant and, in any case, inconsistent with his own best interests. That conclusion is one clearly within the discretion of the trial judge to make and is supported in the evidence.

We can find no grounds to disturb the determination that appellee has been the guiding force in the care, education and discipline of the child and that given the unfortunate breakdown of the marriage and its disruptive effect upon the child's life, Arthur's best interests dictated placement in the custody of his mother. That is not to deprecate in any way the love and concern of appellant for his son; nor do we suggest that he is not a fine and respectable father. But this is a custody struggle in which a choice must be made from among unsatisfactory alternatives. The decision does not turn upon a court's determination of which parent is the more loving. It turns upon the best judgment possible as to which of two single-parent custodial arrangements will, as between them, serve the

child's best interests. The trial court's determination that Arthur's best interests demand custody be awarded to appellee is not against the great weight of evidence.

## VII

Appellant raises two additional arguments pertaining to the validity of custody award. We find that the erroneous factual findings regarding the validity of the *ex parte* interim order of custody and the trial court's obviously inadvertent misstatement of the child's age were not significant factors in the court's findings. The decision of the Court of Appeals is affirmed.

COLEMAN, C.J., and KAVANAGH, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

WILLIAMS, J. *(concurring).* In light of the disruption that this divorce and child custody case has already caused in the life of this 11-year-old child, I concur with my Brother, Justice RYAN. I would like to note, however, that I am far less confident than he that the trial judge made the correct decision in awarding custody to the mother.

First of all, I am not so sure that the environment surrounding the mother would be better than that surrounding the father. Second, I do not agree that the separation of the parents and ultimate divorce destroyed the pre-separation environment. The child was certainly affected by the separation of his parents, but his ties with the community remained, such as the same school, the same playmates, the same family ties and participation in extra-curricular activities. These factors are especially important in the life of a young child when his parents are separated or divorced and, therefore, should not be cast aside lightly.