# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

SABATINE v SABATINE

Docket No. 165279. Argued on application for leave to appeal November 9, 2023. Decided June 11, 2024.

Plaintiff, Andrew P. Sabatine, moved in the Leelanau Circuit Court, Family Division, to amend a temporary custody order that granted defendant, Colleen K. Sabatine, primary physical custody of the parties' two children. The couple had lived together in Traverse City, but in September 2020, defendant left with the children and moved to Fenton. While in Fenton, and without plaintiff's knowledge, defendant switched the children's primary-care doctors and school enrollments, although the children had not yet started school for the year. She later testified that she did not think to include plaintiff on any of the decision-making and just parented as a single mother. Shortly thereafter, the parties commenced divorce proceedings. On January 7, 2021, the trial court entered the temporary custody order, which granted the parties joint legal custody, granted defendant primary physical custody, and granted plaintiff parenting time every other weekend and two nonconsecutive weeks during the summer. In accordance with that order, the children spent the majority of their time with defendant in Fenton. Plaintiff moved to have the children returned to the Traverse City area. Following an evidentiary hearing, the trial court issued an order awarding the parties joint legal custody, granting defendant primary physical custody, and awarding parenting time as follows: (1) during the school year, defendant would have the majority of parenting time, whereas plaintiff would have parenting time every other weekend plus the week during spring break, and plaintiff would also have the option of an additional weekend day per month to be exercised in Fenton; (2) during the summer when the children were out of school, plaintiff would have the majority of parenting time, while defendant would have parenting time every other weekend plus one week for vacation time. In reaching this result, the trial court determined that the children had established custodial environments with both parents, that the parenting-time order would not upset the established custodial environments, and that the schedule was in the children's best interests by a preponderance of the evidence. In March 2022, the trial court entered a judgment of divorce that incorporated this custody and parenting-time order. Both parties appealed, and the Court of Appeals consolidated the appeals. In plaintiff's appeal (Docket No. 361068), the Court of Appeals, SHAPIRO, P.J., and BORRELLO and YATES, JJ., in an unpublished per curiam opinion issued on December 15, 2022 (Docket Nos. 361068 and 361074), affirmed the trial court's analysis of the best-interest factors, reversed the trial court's holding that the custody order would not change the children's established custodial environments, and remanded the case to the trial court to "reassess its decision using the proper standard." Defendant

sought leave to appeal the issues in Docket No. 361068 in the Supreme Court; the issues in defendant's appeal in Docket No. 361074 were not appealed. The Supreme Court ordered and heard oral argument on the application. 511 Mich 989 (2023).

In a unanimous opinion by Justice VIVIANO, the Supreme Court, in lieu of granting leave to appeal, *held*:

The question whether a parenting-time provision modifies a child's established custodial environment is to be answered on the basis of the circumstances that exist at the time the trial court renders its custody decision, and appellate courts have a statutory obligation under MCL 722.28 of the Child Custody Act, MCL 722.21 *et seq*., to affirm trial court determinations unless they are based on findings of fact against the great weight of the evidence, a palpable abuse of discretion, or a clear legal error on a major issue.

1. MCL 722.27(1)(c) gives the circuit court the authority to modify or amend its previous judgments or orders for proper cause shown or because of a change of circumstances, except that the court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interests of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. Because it was not contested, it was assumed that a child can have an established custodial environment with both parents.

2. In this case, the Court of Appeals held that the children had established custodial environments with both parents because before defendant departed with the children, the parties and children all lived together as a family and both parents cared for the children. But the Court of Appeals improperly held that the focus of the established-custodial-environment determination was the child-rearing situation for the children before defendant's departure. Instead, in cases in which the preseparation custodial environment no longer exists, the relevant point in time for purposes of determining whether an established custodial environment exists is at the time the trial court makes its custody determination. The preseparation circumstances are only relevant to the extent that they continue to exist or are probative of whether a new established custodial environment exists at the time the trial court is rendering its decision. For instance, in determining whether a custodial environment has been established over an appreciable time, the trial court will often need to compare and contrast the lives of the children before separation and afterward. But the dispositive inquiry is not whether an established custodial environment existed prior to separation; rather, it is whether such an environment continues to exist, or a new one exists, at the time of the trial court's custody determination. The trial court in this case properly made its ultimate determination on the basis of the circumstances that existed at the time of its decision, although the circumstances of the family prior to the separation were relevant to that determination.

3. When considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than

that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would not modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests.

4. The Court of Appeals' analysis regarding whether the parenting-time modification altered the children's established custodial environments was flawed in two respects. First, the Court of Appeals failed to afford proper deference to the trial court's decision. The Court of Appeals quoted the proper standard, but it never explained how the facts clearly preponderated against the trial court's factual findings or how the findings were against the great weight of the evidence. Second, the facts did not clearly preponderate in the direction of finding that the parenting-time provision in the judgment of divorce amounted to a change in the children's established custodial environments. The Court of Appeals' analysis was incorrect because it measured the change from the period prior to the separation—i.e., when the children were with both parents for 365 days a year—to what the custody order required. In doing so, the Court of Appeals ignored what happened between the separation and the judgment of divorce: the trial court had entered a temporary order that addressed parenting time, giving plaintiff approximately 69 overnights per year, and the children had new established custodial environments with both parents during this time. Thus, contrary to the Court of Appeals' assertion, the judgment of divorce did not give plaintiff significantly fewer overnights or substantially change the nature of his interaction with the children. Despite the imbalance in time spent with each parent, at the time the judgment of divorce entered, the children had established custodial environments with both parents. Given the strong bonds the children had with both parents and the fact that established custodial environments existed with both parents despite the imbalance in time spent with each parent, any changes caused by the judgment of divorce to the established custodial environments that the children share with each parent would be minor. Accordingly, the trial court did not err when it concluded that the entry of the judgment of divorce would not modify the children's established custodial environments, and it was appropriate for the trial court to apply the preponderance-of-the-evidence standard.

Part I(C) of the Court of Appeals' judgment reversed; case remanded to the trial court for further proceedings.

Justice ZAHRA, concurring, wrote separately to express his concern with the trial court's initial determination that the established custodial environment of the children did not change since before separation when defendant unilaterally removed the children from Traverse City, the only home they ever knew, and relocated them to Fenton. The court appeared to ignore the emotional and physical disruption the children experienced as a result of defendant's unilateral actions. Trial courts must strictly adhere to a review of all statutory factors in MCL 722.27(1)(c) when making an initial determination of a child's established custodial environment.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED  June 11, 2024

S T A T E   O F   M I C H I G A N

SUPREME COURT

ANDREW PAUL SABATINE,

Plaintiff-Appellee,

v

No. 165279

COLLEEN KNECHT SABATINE,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

At issue in this case is whether the parenting-time provision incorporated into the judgment of divorce modified any established custodial environment or environments the parties' children had with their parents.  We conclude that the Court of Appeals erred by reversing the trial court because the facts do not clearly preponderate against the trial court's findings that the parenting-time provision in the judgment of divorce would not modify the children's established custodial environments with both parents.  Two points

bear emphasis: (1) the question whether a parenting-time provision modifies a child's established custodial environment is to be answered on the basis of the circumstances that exist at the time the trial court renders its custody decision; and (2) appellate courts have a statutory obligation under MCL 722.28 to affirm trial court determinations unless they are based on findings of fact against the great weight of the evidence, a palpable abuse of discretion, or a clear legal error on a major issue. We reverse Part I(C) of the judgment of the Court of Appeals and remand this case to the trial court for proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff-father and defendant-mother married in 2013 and had two daughters: AVS in 2015 and VLS in 2018. The couple lived together in Traverse City, but in September 2020, defendant left with the children and moved to Fenton.[1] While in Fenton, and without plaintiff's knowledge, defendant switched the children's primary-care doctors and school enrollments, although the children had not yet started school for the year. She later testified that she did not think to include plaintiff on any of the decision-making and just parented

---

[1] Fenton is approximately 170 miles from Traverse City. The parties dispute the circumstances surrounding the move. Plaintiff contends that defendant took the girls on a trip without any indication that she intended not to return or that she intended to divorce plaintiff. She sent him messages that implied that she would bring the children back to Traverse City and attend marriage counseling with plaintiff. Plaintiff eventually found out that defendant had no intention of coming back with the children when he went to Fenton to retrieve his vehicle and family. Defendant counters that she was not being sneaky but rather hid the move from plaintiff until she and the children were in Fenton because plaintiff frequently drank to excess and had "drinking rages." She had safety concerns for herself and the children and concerns about how plaintiff would react. The trial court questioned defendant's credibility with respect to plaintiff's alcohol use.

2

as a single mother. Shortly thereafter, the parties commenced divorce proceedings.[2] On January 7, 2021, the trial court entered a temporary order granting the parties joint legal custody, granting defendant primary physical custody, and granting plaintiff parenting time every other weekend and two nonconsecutive weeks during the summer (for a total of approximately 69 overnights per year). In accordance with the temporary custody order, the children continued to spend the majority of their time with defendant in Fenton.

Plaintiff filed motions regarding parenting time, seeking to have the children returned to the Traverse City area. After an evidentiary hearing, the trial court issued an order on November 16, 2021, awarding the parties joint legal custody, granting defendant primary physical custody, and awarding parenting time as follows: (1) during the school year, defendant would have the majority of parenting time, whereas plaintiff would have parenting time every other weekend plus the week during spring break, and plaintiff would also have the option of an additional weekend day per month to be exercised in Fenton; (2) during the summer when the children are out of school, plaintiff would have the majority of parenting time, while defendant would have parenting time every other weekend plus one week for vacation time. In reaching this result, the trial court determined that the children had established custodial environments with both parents, that the parenting-time order would not upset the established custodial environments, and that the schedule was in the children's best interests by a preponderance of the evidence. In March 2022, the trial

---

[2] Defendant filed for divorce in Genesee County, where Fenton is located, and plaintiff filed for divorce in Leelanau County four days later. The Genesee County case was dismissed, and the Leelanau County case has continued.

3

court entered a judgment of divorce that incorporated this custody and parenting-time order.

Both parties appealed, and the Court of Appeals consolidated the appeals. In plaintiff's appeal (Docket No. 361068), the Court of Appeals affirmed the trial court's analysis of the best-interest factors, reversed the trial court's holding that the custody order would not change the children's established custodial environments, and remanded the case to the trial court to "reassess its decision using the proper standard." *Sabatine v Sabatine*, unpublished per curiam opinion of the Court of Appeals, issued December 15, 2022 (Docket No. 361068), p 9.[3]

Defendant sought leave to appeal in this Court. We ordered oral argument on the application, directing the parties to brief whether:

> (1) the Leelanau Circuit Court and the Court of Appeals correctly determined that the children have an established custodial environment with each parent, see *Baker v Baker*, 411 Mich 567 (1981); *Rains v Rains*, 301 Mich App 313 (2013); (2) the parenting-time terms incorporated into the judgment of divorce altered a potential established custodial environment, see *Pierron v Pierron*, 486 Mich 81 (2010); (3) the Court of Appeals remand instructions are sufficiently clear to guide the circuit court on remand as to what evidentiary burden it must apply, see *Griffin v Griffin*, 323 Mich App 110, 128 (2018); but see *Butters v Butters*, 510 Mich ___ (2022) (Docket No. 164888); and (4) in an initial judgment of divorce, a court should consider the circumstances of the parties at the time of separation or prior to their separation to determine the child's established custodial environment, see *Bofysil v Bofysil*, 332 Mich App 232, 246 (2020). [*Sabatine v Sabatine*, 511 Mich 989, 989 (2023).]

---

[3] The issues in defendant's appeal (Docket No. 361074) have not been appealed in this Court.

4

## II. STANDARD OF REVIEW

Under MCL 722.28 of the Child Custody Act, MCL 722.21 *et seq.*, "[t]o expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28 incorporates three standards of review into the act: (1) "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction," *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (cleaned up); (2) "an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias," *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015) (cleaned up); and (3) clear legal error exists when "a court incorrectly chooses, interprets, or applies the law," *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994).

These three deferential standards of review "are part of the Legislature's comprehensive effort to promote the best interests and welfare of children." *Fletcher*, 447 Mich at 877. By incorporating them into the act, "the Legislature apparently recognized that in custody cases the proceedings themselves may jeopardize a child's welfare." *Id*. Therefore, MCL 722.28 "limits the power of an appellate court to disturb a trial court's custody decision . . . ." *Baker*, 411 Mich at 577. When exercising their limited powers in this area, appellate courts should always bear in mind

that trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests. [*Fletcher*, 447 Mich at 889-890.]

## III. ANALYSIS

## A. LEGAL BACKGROUND

MCL 722.27(1)(c) gives the circuit court the authority to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances," with the following exception:

> The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

The Legislature adopted MCL 722.27 "to minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an 'established custodial environment', except in the most compelling cases." *Baker*, 411 Mich at 576-577. An established custodial environment depends

> upon a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence. [*Id*. at 579-580.]

6

Because it is not contested, we assume, without deciding, that a child can have an established custodial environment with both parents.

Finally, we have summarized the approach a trial court must follow when making a decision that could modify an established custodial environment:

> When considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Pierron*, 486 Mich at 92-93.]

## B. THE PROPER TEMPORAL FOCUS WHEN DETERMINING IF A JUDGMENT OR ORDER WILL MODIFY A CHILD'S ESTABLISHED CUSTODIAL ENVIRONMENT

The Court of Appeals believed the children had established custodial environments with both parents because prior to defendant's departure, the parties and children all lived together as a family and both parents cared for the children. But in reaching this conclusion, the Court of Appeals held that the proper focus of its inquiry was "the child-rearing situation for the girls before defendant's departure." *Sabatine*, unpub op at 6, citing *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). We disagree with the Court of Appeals' emphasis on the preseparation child-rearing situation on the facts of this case. Instead, in cases like this one, where the preseparation custodial environment no longer exists, the relevant point in time for purposes of determining whether an established

7

custodial environment exists is at the time the trial court makes its custody determination. See MCL 722.27(1)(c) (precluding a trial court from taking an action "so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child"). A judgment or order cannot change an established custodial environment that no longer exists.

In *Baker*, we addressed a similar situation involving a unilateral move by one parent with the children to a remote location. The father argued that his son—the child whose custody was at issue—lived in an established custodial environment in Alpena from his birth to the time of trial. *Baker*, 411 Mich at 580. The Court noted the many familial and community contacts the child had when living together in the family home and that "these contacts and associations contributed importantly to the custodial environment" in which the child lived. *Id*. But the Court observed that "[t]hat environment began to deteriorate, however, with the disruptive events of the summer of 1978, and it was ultimately destroyed by the breakup of the parents' marriage and the dissolution of the family." *Id*. As a result, the Court found that "those repeated custodial changes and geographical moves, with the necessarily attendant emotional implications, destroyed the previously established custodial environment in which the boy was living and precluded the establishment of a new one, at least until after the trial." *Id*. at 581. The child's community contacts and familiar associations "were not, by their nature, sufficient to preserve [the previously existing custodial] environment once the family unit dissolved and the boy entered into a new custodial relationship with his father alone, in a radically altered lifestyle in a new home." *Id*. at 581-582. Significantly, the Court concluded that "at the time of trial there had been no 'appreciable time [during which] the child naturally look[ed]' to his father

8

*alone* 'for guidance, discipline, the necessities of life and parental comfort' in a stable, settled atmosphere in order that an 'established custodial environment' within the meaning of [MCL 722.27(1)(c)] could exist." *Id*. at 582 (first two alterations and emphasis by the *Baker* Court).

Thus, as *Baker* demonstrates, for purposes of MCL 722.27(1)(c), whether an established custodial environment existed prior to the parents' separation is immaterial if that established custodial environment no longer exists. However, this does not mean that the circumstances of the parties and children prior to the separation should not carefully be evaluated. In some cases, the custodial environment prior to separation might be relevant to whether an established custodial environment exists at the time the trial court is set to enter the judgment of divorce.

But the Court of Appeals in this case did not look to the family dynamics before separation for this purpose. The Court of Appeals found *Bofysil*, 332 Mich App at 236-243, to be "instructive" as to the circumstances that were relevant for determining the children's established custodial environment. *Sabatine*, unpub op at 6. In *Bofysil*, the Court of Appeals looked to the preseparation household dynamic but failed to consider whether it continued after the parties separated.[4] In the present case, the Court of Appeals took this a step further and expressly held that "what is important here is the child-rearing situation for the girls before defendant's departure." *Sabatine*, unpub op at 6. But the Court did not explain how a custodial environment that no longer existed was relevant to determining whether an established custodial environment existed at the time the trial court

---

[4] Indeed, it is difficult to determine from the opinion how long the postseparation period lasted until the order or judgment concerning custody was entered.

9

made its custody determination, which was approximately 14 months later. Thus, the Court of Appeals erred by focusing on the time prior to the parties' separation.

To summarize, the circumstances of the parties at the time of separation or prior to separation might be relevant to determining whether an established custodial environment exists at the time the judgment of divorce is issued. For instance, in determining whether a custodial environment has been established over an appreciable time period, the trial court will often need to compare and contrast the lives of the children before separation and afterward. But the dispositive inquiry is not whether an established custodial environment existed prior to separation; rather, it is whether such an environment continues to exist, or a new one exists, at the time of the trial court's custody determination. The preseparation circumstances are only relevant to the extent that they continue to exist or are probative of whether a new established custodial environment exists at the time the trial court is rendering its decision—in this case, when it issued the custody order.

Here, the trial court found "that an established custodial environment existed and continues to exist with both parties." The trial court properly made its ultimate determination on the basis of the circumstances that existed at the time of its decision, although the circumstances of the family prior to the separation were relevant—as they often will be—to that determination. Neither party disputes the trial court's finding on this point.

## C. THE JUDGMENT OF DIVORCE DID NOT ALTER THE CHILDREN'S ESTABLISHED CUSTODIAL ENVIRONMENTS

At issue in this case is whether a modification to parenting time altered the children's established custodial environments. Not all modifications to parenting time will

10

automatically constitute a change in custody. See *Shade v Wright*, 291 Mich App 17, 25; 805 NW2d 1 (2010). Because a modification to parenting time is "distinct" from a change in custody, "only if a 'change in parenting time results in a change in the established custodial environment' should the court apply the 'proper cause and change of circumstances' framework [from MCL 722.27(1)(c)] to a proposed change in parenting time." *Rains v Rains*, 301 Mich App 313, 340; 836 NW2d 709 (2013), quoting *Shade*, 291 Mich App at 27. If the modification would change the child's established custodial environment, the clear-and-convincing-evidence standard applies to the best-interest inquiry, but if the modification does not change the child's established custodial environment, the preponderance-of-the-evidence standard applies. See *Rains*, 301 Mich App at 340. Thus, as noted above, the relevant question to determine whether the "proper cause and change of circumstances" framework applies is whether the modification to parenting time will "change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort . . . ." *Pierron*, 486 Mich at 86.

The Court of Appeals in this case relied on *Lieberman v Orr*, 319 Mich App 68; 900 NW2d 130 (2017), in which the defendant-mother had primary physical custody of the children, and the parties had stipulated to a parenting-time schedule that gave the plaintiff-father approximately $\frac{1}{3}$ of the overnights per year, *id.* at 72. The plaintiff sought to change the parenting-time schedule to essentially swap the amount of overnights, and the Court of Appeals concluded that this would have been a significant modification that would have changed the children's established custodial environment. *Id.* at 89-92. Although *Lieberman* addressed the issue whether proper cause or a change in circumstances existed,

11

the Court of Appeals applied its analysis to the established-custodial-environment determination in this case.

Applying *Lieberman*, the Court of Appeals in this case explained that both parents had the children for 365 overnights per year before the parents' separation, and the custody order the trial court entered gave "plaintiff significantly fewer overnights" and "substantially chang[ed] the nature of his interaction with the children," making him "a weekend parent." *Sabatine*, unpub op at 8, 9. As a result, the Court of Appeals held that the trial court erred by concluding that the parenting-time schedule did not disrupt the established custodial environments and by applying the preponderance-of-the-evidence standard to the best-interest determination.

The Court of Appeals' analysis is flawed in two respects. First, the Court of Appeals failed to afford proper deference to the trial court's decision. The Court of Appeals quoted the proper standard, but it never explained how the facts "clearly preponderate[d]" against the trial court's factual findings or how the findings were "against the great weight of evidence." *Pierron*, 486 Mich at 85 (quotation marks and citations omitted); MCL 722.28; see also *Fletcher*, 447 Mich at 889-890. After extensively analyzing the facts in *Lieberman*, the Court of Appeals cursorily explained that it saw no reason why *Lieberman*'s analysis should not apply to the established-custodial-environment analysis in this case. In contrast with the trial court's lengthy analysis, which made up almost three pages of its opinion and order, the Court of Appeals' actual analysis of the facts in this case was very limited. Absent from the Court of Appeals' analysis was any meaningful explanation of how the facts clearly preponderated against the trial court's factual findings or how the findings were against the great weight of the evidence. In short, the Court of

12

Appeals failed to provide the trial court's factual findings with the deference they are due under MCL 722.28 and this Court's precedents. See *Fletcher*, 447 Mich at 877-881, 889-890; *Baker*, 411 Mich at 577-578.

The Court of Appeals ignored the trial court's particularized analysis of the specific facts relevant to *this* family and instead cursorily applied the mathematical principles from *Lieberman*. In doing so, it treated the established-custodial-environment question as if it were a simple math equation that could be answered by looking at the number of overnights the children spend with each parent. But determining whether an established custodial environment will be modified by a court order or judgment is not that simple. Although the "physical environment" of the children is to be considered in determining a child's established custodial environment, it is not the only factor, and it is not alone dispositive. See MCL 722.27(1)(c) (listing "physical environment" as one of a number of factors to be considered).[5]

Of course, this is not to say that the physical environment and number of overnights a child spends with a parent is not important to the determination of whether an established custodial environment exists. For an established custodial environment to exist, the custodial relationship must endure for "an appreciable time," and "the inclination of the custodian and the child as to the permanency of the relationship shall also be considered." MCL 722.27(1)(c). In other words, the custodial relationship must be "of a significant duration." *Baker*, 411 Mich at 579. We caution courts not to place too much or too little

---

[5] In reaching this conclusion, it is unnecessary to overrule *Lieberman*, and no party has asked us to do so. But we caution courts performing an analysis under MCL 722.27(1)(c) not to place too much emphasis on the number of overnights a child spends with each parent.

emphasis on the child's physical environment and instead recognize that child-custody cases are often factually complex. It is the trial courts that are typically in the best position to analyze the factual complexities of child-custody cases. See *Fletcher*, 447 Mich at 889-890; see also *Baker*, 411 Mich at 577-578.

Second, the facts do not clearly preponderate in the direction of finding that the parenting-time provision in the judgment of divorce amounted to a change in the children's established custodial environments. The Court of Appeals' analysis is incorrect because it measured the change from the period prior to the separation (i.e., when the children were with both parents for 365 days a year) to what the custody order required. In doing so, the Court of Appeals ignored what happened between the separation and the judgment of divorce: the trial court had entered a temporary order that addressed parenting time, giving plaintiff approximately 69 overnights per year, *and the children had new established custodial environments with both parents during this time*. Thus, contrary to the Court of Appeals' assertion, the judgment of divorce did not "giv[e] plaintiff significantly fewer overnights" or "substantially chang[e] the nature of his interaction with the children." *Sabatine*, unpub op at 8. Rather, the judgment of divorce increased plaintiff's overnights, and more importantly, it maintained the nature of his interaction with the children as it existed at the time the trial court made its decision on parenting time when issuing the judgment of divorce.

Despite the imbalance in time spent with each parent, at the time the judgment of divorce entered, the children had established custodial environments with both parents. The children were relatively young at the time of the separation; AVS was just under five years old, and VLS was four months shy of her third birthday. More than a year had passed

14

between the separation and the entry of the judgment of divorce.[6]  Thus, for a significant portion of their lives, the children spent most of their time with defendant.  Despite this, they had a strong bond with both parents and "naturally look[ed]" to both parents "for guidance, discipline, the necessities of life, and parental comfort."  MCL 722.27(1)(c).  Given these strong bonds and the fact that established custodial environments existed with both parents despite the imbalance in time spent with each parent, we believe that—from the children's perspective—any changes caused by the judgment of divorce to the established custodial environments that the children share with each parent will be, at most, minor.  See *Pierron*, 486 Mich at 89.  As a result, we find no error in the trial court's conclusion that the entry of the judgment of divorce would not modify the children's

---

[6] We recognize that it might seem unfair that one parent can make a unilateral decision to move the children and, because of the length of time between the initial separation and the final determination of custody, create a new established custodial environment.  However, as the Court of Appeals recognized in *Blaskowski v Blaskowski*, 115 Mich App 1, 7; 320 NW2d 268 (1982), this is a consequence of the necessity of temporary custody orders, and that consequence is not without a potential remedy:

> The trial court emphasized that temporary custody orders are necessary for care of the child while the parties prepare for a hearing on the merits of the custody dispute.  We recognize a potential for unfairness to the noncustodial parent if custody pursuant to such a temporary order may ripen into an established custodial environment.  Nevertheless, the Legislature has decided that the best interests of the child prevail over procedural fairness to the parents and that the best interests of the child generally require continuance of an established custodial environment.  We note, however, that contested custody cases have been given precedence over all other civil cases.  MCL 722.26; MSA 25.312(6), GCR 1963, 501.5.  Trial courts and parties should endeavor to avoid having custody pursuant to a temporary order ripen into an established custodial environment by expediting the progress of contested custody cases to trial.

established custodial environments, and it was appropriate for the trial court to apply the preponderance-of-the-evidence standard. See *Rains*, 301 Mich App at 340.

## IV. CONCLUSION

The Court of Appeals erred to the extent that it reversed the trial court. First, we clarify that the question whether a parenting-time provision modifies a child's established custodial environment for purposes of MCL 722.27(1)(c) is to be answered on the basis of the circumstances that exist at the time the trial court renders its custody decision—here, when it issued the custody order. Second, we reiterate that appellate courts have a statutory obligation under MCL 722.28 to affirm trial court determinations in child-custody cases unless they are based on findings of fact against the great weight of the evidence, a palpable abuse of discretion, or a clear legal error on a major issue. We hold that the Court of Appeals failed to give proper deference to the trial court's findings of fact, and the facts here do not clearly preponderate against the trial court's factual findings that the parenting-time provision in the judgment of divorce did not alter the children's established custodial environments. For these reasons, we reverse Part I(C) of the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.

David F. Viviano
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

16

ANDREW PAUL SABATINE,

      Plaintiff-Appellee,

v                                        No. 165279

COLLEEN KNECHT SABATINE,

      Defendant-Appellant.

---

ZAHRA, J. (*concurring*).

I concur in the Court's decision to reverse Part I(C) of the Court of Appeals judgment and thereby reinstate the trial court's custody order. However, I am troubled by the trial court's initial determination that the established custodial environment (ECE) of the children did not change when defendant unilaterally removed the children from Traverse City, the only home they ever knew, and relocated them to Fenton, a finding that was inconsistent with that made by the Friend of the Court referee.[1] At every stage of divorce proceedings, trial courts must determine the ECE in accordance with the plain language of MCL 722.27(1)(c). Specifically, trial courts must consider all the listed statutory factors, not just those that achieve a desired outcome. Here the trial court observed that the separation of the children from their father and their lifelong home "[c]ould . . . have been handled more gracefully . . . ." This is an understatement. Notwithstanding its concerns, the court appears to have ignored the emotional

---

[1] The trial court concluded that "[t]he established custodial environment with both parents that existed before separat[ion] continues." It then applied a preponderance-of-the-evidence standard, as is required when the custody order does not alter an ECE. See *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010).

and physical disruption the children experienced as a result of the mother's unilateral actions, in part because Michigan is a "no fault" divorce state. But nothing in Michigan family law gives a parent the right to unilaterally disrupt the emotional and physical stability of children, and certainly that right does not arise from the lack of a fault requirement to procure a divorce.[2]

Trial courts faced with similar facts must focus on every statutory factor identified in MCL 722.27(1)(c). Thus, the trial court must consider not just the psychological aspects of a child's ECE but also the physical aspects, which can be just as important to the determination and which appear to have been omitted in the trial court's analyses in this case.[3] Given the

[2] Unless ordered otherwise, whether through statutory authority under divorce proceedings or through other legally recognized means, parents are presumed to have equal rights to the direction and control of their children. 59 Am Jur 2d, Parent and Child (May 2024 update), § 32 ("In a custody dispute between father and mother, the modern view is that neither has a superior right to custody . . . ."); 67A CJS, Parent and Child (May 2024 update), § 56 ("Where parents are each seeking custody of their children, each has a full and equal constitutionally protected paramount right to custody, care, and control of their children and there exists no presumption regarding custody merely on the basis of either party's parental status."); *In re Ayala*, 344 Ill App 3d 574, 585; 800 NE2d 524 (2003) ("Neither parent's right to custody, control and care of their child is superior to that of the other parent. This means that the equal right of one parent to custody, care and control of the child does not encompass the right to shift custody of a child to a third party.") (citation omitted); accord *Sabo v Sabo*, 858 NE2d 1064, 1068 (Ind App, 2006); *Hartford Accident & Indemnity Co v Borchers*, 3 Ohio App 3d 452, 454; 445 NE2d 1160 (1982); see also *Troxel v Granville*, 530 US 57, 66; 120 S Ct 2054; 147 L Ed 2d 49 (2000) ("In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *In re Sanders*, 495 Mich 394, 400, 421-422; 852 NW2d 524 (2014) (holding that the right to control and custody of children constitutionally must extend equally to a parent, despite the other parent being the direct subject of neglect proceedings for supervision of children).

[3] MCL 722.27(1)(c) ("The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian *in that environment* for guidance, discipline, the necessities of life, and parental comfort.") (emphasis added); *Rains v Rains*, 301 Mich App 313, 327; 836 NW2d 709 (2013) ("It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence.") (quotation marks and citation omitted); *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008) (holding that one parent's move to an entirely different region and

2

changing facts on the ground and the potential for strategic behavior, which ultimately redounds to the significant detriment of children, it is critically important that the trial court strictly adhere to a review of all statutory factors when making an initial determination of ECE.

Notwithstanding concerns with this aspect of the trial court proceedings, vacation of the trial court's order and remand for further proceedings is not warranted at this time. As this Court has recently instructed, a trial court should reconsider the children's ECEs as they exist at the time of remand while considering up-to-date information.[4] The judgment of divorce in this case entered more than two years ago, and the children moved to Fenton almost four years ago. Reevaluation at this point would be superfluous given the lengthy time these youthful children have established their lives in Fenton.

Therefore, I concur in the Court's decision to reverse the Court of Appeals judgment in part and thereby to reinstate the trial court's custody order.

Brian K. Zahra

---

community, relegating the other parent's status with the child to a "weekend parent," constituted a change in ECE); see also *Stoudemire v Thomas*, 344 Mich App 34, 48-49; 999 NW2d 43 (2022) (noting the long line of Michigan caselaw where family courts consider the circumstances of temporary relocation of a child away from a prior environment in order to prevent parental behavior that harms children, i.e., through parental refusal to place a child in short-term custodial arrangements despite the child's best interests).

[4] See *Butters v Butters*, 510 Mich 1096, 1096-1097 (2022).