*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HAILEY IRENE SAENZ JONES,

        Plaintiff-Appellee,

v

JADA NICOLE JONES,

        Defendant-Appellant.

UNPUBLISHED
August 12, 2025
11:20 AM

No. 373068
Kent Circuit Court
LC No. 19-009778-DM

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order, entered after a de novo review hearing, granting plaintiff's motions to change the domicile of the parties' two minor children, TAJ and TJJ, from Michigan to Florida and for sole legal custody of the children, and denying defendant's motion to change physical custody. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties married in October 2015 and separated in December 2018. TAJ and TOJ both were born during the marriage. In October 2019, plaintiff filed a complaint for divorce, seeking sole legal and physical custody of the minor children. In March 2021, the parties signed a consent judgment of divorce granting plaintiff physical custody of the children and defendant parenting time; they agreed to joint legal custody. During the proceedings below, plaintiff claimed to have learned from a Facebook post that defendant had moved to Wisconsin in May 2021. Defendant appeared to admit at one point that she had moved to Wisconsin for six months, but she later clarified that she never considered herself to have "moved" there, but only visited to help Yadira Ortiz, her then-fiancée, now wife, remodel her house to prepare for selling it and moving to Michigan. The children visited defendant in Wisconsin for two or three weeks during the summer of 2021, and defendant returned to Michigan around Thanksgiving 2021. Plaintiff alleged—and defendant did not dispute—that defendant did not begin to exercise regular parenting time in accordance with the judgment of divorce until July 2022.

In 2022, the parties agreed that defendant could have the children from June 1 to June 6, while plaintiff attended a wedding out of town. According to plaintiff, a shooting occurred at

-1-

defendant's residence a few days before June 1. Plaintiff believed that the shooting had resulted from an altercation involving defendant's wife, and plaintiff no longer wanted the children to be at defendant's residence while plaintiff was out of town. Plaintiff did not give the children to defendant on June 1. On June 3, defendant moved for an ex parte order for the immediate return of the children, and the trial court granted the motion. On June 14, plaintiff moved ex parte to overturn the June 3 order, alleging that defendant had a violent history, had abused marijuana and alcohol, and had threatened to use corporal punishment on the children. Plaintiff requested that defendant have only supervised parenting time outside of defendant's home. The trial court granted plaintiff's motion, set aside the June 3 ex parte order, and granted plaintiff extended parenting time. On June 16, the trial court amended the June 14 ex parte order to allow service by e-mail. On June 23, defendant filed a verified objection and motion to rescind the June 16 amended order. Defendant denied having a violent history and argued that she was at least an equal caregiver for the children.

While defendant's objection was pending, plaintiff moved for sole legal custody of the children. Defendant responded that the children had an established custodial environment with both parents, accused plaintiff of attempting to alienate the children from her, and referred to an abuse-and-neglect investigation opened after TJJ had accidentally ingested medication belonging to plaintiff's fiancé, Lucas Melo. Defendant denied ever exposing the children to marijuana or withholding the children from plaintiff. After hearing oral argument on the pending motions, the trial court found proper cause to revisit legal custody, referred the matter to the Friend of the Court (FOC) for investigation and recommendation, set aside the June 16 ex parte order, and instructed the parties to abide by the judgment of divorce's custody provisions.

In October 2022, the FOC completed its investigative report, concluding that the children had an established custodial environment with plaintiff and recommending continuation of plaintiff's physical custody and joint legal custody. The report included parenting-time recommendations. Defendant objected to the FOC's recommendations and requested joint physical custody and a week-on/week-off or 2/2/5/5 schedule. Plaintiff responded, opposing a 50/50 parenting-time schedule and reiterating concerns about defendant's parenting. The parties stipulated to an evidentiary hearing to resolve the objections to the FOC report, and a hearing was scheduled for April 2023.

In March 2023, plaintiff moved to change the children's domicile from Michigan to Florida. Defendant opposed the motion. Plaintiff's motion to change domicile was consolidated into the evidentiary hearing.

The four-day evidentiary hearing addressed the parties' objections to the FOC recommendation, plaintiff's motion to change domicile, and both parties' motions for changes in custody, with testimony from multiple witnesses regarding the children's adjustment, parenting history, the May 2022 shooting, substance-use allegations, and the proposed move to Florida. In March 2024, the referee issued a recommendation, finding that plaintiff had shown that her change of domicile should be considered and that the move would improve the quality of life for plaintiff and the children. The referee also found that defendant's parenting time had been sparse and irregular. The referee recommended granting plaintiff's motion for a change of domicile, denying her motion for sole legal custody, and denying defendant's motion for a change in physical

custody. An interim order was entered giving the referee's recommendations effect pending any objection by the parties.

Both parties objected to the referee's recommendation and sought de novo review. Plaintiff requested modification of the parenting-time order, and defendant objected that the recommendation was biased and factually incorrect. On March 21, 2024, the trial court granted defendant's ex parte motion for an order staying the effect of the interim order (and ordering that plaintiff was not allowed to take the children out of Michigan) until after the de novo review hearing, but on March 27, 2024 it entered an order overturning that order on plaintiff's ex parte motion, thus permitting plaintiff to move with the children to Florida.

A de novo review hearing began in April 2024, with the trial court stating that it would base its review on the record, written arguments, and any new evidence that was unavailable at the time of the previous evidentiary hearing. The hearing concluded in July 2024, with both parties agreeing that the current parenting-time schedule was not working because of the burden and expense of frequent cross-country travel for short periods, and testimony was heard regarding the impact of the move to Florida, abuse-and-neglect complaints in Michigan and Florida, and issues with parenting-time exchanges.

After taking the matter under advisement, the trial court issued a written opinion and order. The court found that the proposed change in the children's legal residence to Florida would improve plaintiff's and the children's lives, that plaintiff's compliance with parenting-time orders favored her, and that a new parenting-time schedule could maintain or strengthen the children's relationship with defendant. The court found that the children had an established custodial environment with plaintiff, but not with defendant, and that the change in domicile would not affect the established custodial environment. After considering the children's best interests, the court also granted plaintiff's motion for sole legal custody, denied defendant's motion for a change in physical custody, and awarded defendant parenting time. This appeal followed.

## II. GENERAL STANDARD OF REVIEW

On appeal, this Court must affirm all orders and judgments of the circuit court pertaining to a child custody dispute "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. This standard applies to orders governing parenting time. *Barretta v Zhitkov*, 348 Mich App 539, 549; 19 NW3d 420 (2023).

"The great weight of the evidence applies to all findings of fact." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003) (quotation marks and citation omitted). A trial court's finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994).

"An abuse of discretion standard is applied to a trial court's discretionary rulings such as custody decisions." *Vodvarka*, 259 Mich App at 507 (quotation marks and citation omitted). With respect to custody issues, a palpable abuse of discretion exists "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance

of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

"Questions of law are reviewed for clear legal error." *Vodvarka*, 259 Mich App at 508 (quotation marks and citation omitted). "Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law." *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020) (quotation marks and citation omitted). This Court reviews de novo the trial court's application of the law to the facts, see *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015), and "gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments," *Brown*, 332 Mich App at 8.

## III. EX PARTE ORDERS

Defendant argues that the trial court erred by entering several ex parte orders. We disagree.

MCR 3.207(A) allows a trial court to issue ex parte orders "with regard to any matter within its jurisdiction." This rule applies to child custody proceedings. *Johnson v Johnson*, 329 Mich App 110, 129; 940 NW2d 807 (2019); see also MCR 3.207(B)(1). Nevertheless, the trial court's authority to issue ex parte orders in child custody matters is limited by the Child Custody Act of 1970 (CCA), MCL 722.21 *et seq*. *Barretta*, 348 Mich App at 550. MCL 722.27(1)(c) authorizes trial courts to modify or amend prior custody orders for proper cause or because of a change of circumstances. But "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). Accordingly, the trial court cannot modify an established custodial environment, even on a temporary basis, absent clear and convincing evidence that doing so is in the child's best interests, and evidence on that point must be adduced at an evidentiary hearing held for that purpose. See *Barretta*, 348 Mich App at 550, 560.

Defendant argues that the trial court erred by entering the June 14, 2022 ex parte order without a hearing because the order modified her parenting time. Defendant does not explain specifically how the June 14 ex parte order modified her parenting time. Under the judgment of divorce, plaintiff had primary physical custody of the children, and defendant had parenting time on Mondays and Thursdays from 4:00 p.m. to 8:00 p.m., on alternate weekends from noon on Saturday to 6:00 p.m. on Sunday, and during two, nonconsecutive seven-day periods during the summer, in addition to holiday parenting time. Defendant does not explain how any of the language in the June 14 ex parte order altered these arrangements, and the order on its face does not purport to modify either parties' parenting time. Parties "may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims . . . ." *Id*. at 550 n 13 (quotation marks, citation, and brackets omitted).

In any event, we conclude that any error in the trial court's entry of the June 14 ex parte order was harmless. See *id*. at 561. Under harmless-error review, an error in a ruling, order, or anything done or not done by the trial court is not grounds for "disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A).

The harm associated with entering an order that changes custody without making the factual and legal findings required by MCL 722.27(1)(c) is that the order may create circumstances that modify a child's established custodial environment and affect a parent's evidentiary burdens at subsequent custody hearings. See *O'Brien v D'Annunzio*, 507 Mich 976, 976; 959 NW2d 713 (2021); *Daly v Ward*, 501 Mich 897, 898; 901 NW2d 897 (2017). Defendant does not argue that the June 14 ex parte order, which rescinded an ex parte order that had been in place for less than two weeks, changed the established custodial environment or created the circumstances for a change in the established custodial environment that could affect defendant's evidentiary burden in later proceedings. Defendant has not established that she was harmed by the trial court's entry of this order.

Regarding the March 27, 2024 ex parte order overturning the trial court's earlier order, plaintiff asserted that the children were being "whipsawed back and forth by the contrary orders," i.e., the interim ex parte order and the subsequent ex parte order staying the effect of the initial interim order. Plaintiff expressed concern that the entry of two orders one week apart, one saying that she and the children could move to Florida and one saying that they could not leave Michigan, had put children's mental and emotional state at risk. Plaintiff also asserted that the continued separation of the family was having a negative impact on the children. This was more than just alleging that the children would be momentarily disappointed by not going to Florida for spring break.

Further, in conducting its de novo review of the referee's recommendations, the trial court reviewed the transcripts of the evidentiary hearing, the objections to the referee's recommendation and order, and the responses to those objections; allowed the parties to present additional, relevant evidence that was unavailable during the evidentiary hearing; and independently analyzed the domicile factors in MCL 722.31(4). Although defendant implies that the trial court's error was not harmless because the court relied on the fact that the children were already in Florida as justification to affirm the recommended change of domicile and the grant of sole legal custody to plaintiff, defendant has not identified any of the trial court's findings or conclusions that were constrained by the children's relocation to Florida. As already stated, parties "may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims . . . ." *Barretta*, 348 Mich App at 550 n 13 (quotation marks, citation, and brackets omitted). On this record, we conclude that any errors in the entry of the March 21 and March 27 ex parte orders were harmless.

## IV. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant argues that the trial court erred by finding that the children had an established custodial environment with plaintiff, but not with her, and that this finding affected the trial court's decisions regarding both the motion to change domicile and the motion to change custody. We disagree. "Whether an established custodial environment exists is a question of fact that we must affirm unless the trial court's finding is against the great weight of the evidence." *Berger*, 277 Mich App at 706.

Under Michigan law, a child has an established custodial environment "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). A child may have

-5-

more than one established custodial environment. See *Berger*, 277 Mich App at 707. An established custodial environment is one of significant duration, both physical and psychological, in which the relationship between the custodian and child is marked by security, stability and permanence. *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981); *Berger*, 277 Mich App at 706. Whether a child has an established custodial environment depends on the child's living conditions and interaction with his or her custodians. See *Berger*, 277 Mich App at 706. Although past circumstances often are relevant to a trial court's established-custodial-environment determination, a trial court's ultimate determination must be made on the basis of the circumstances that existed at the time of the decision. *Sabatine v Sabatine*, 513 Mich 276, 290; 15 NW 3d 204 (2024).

There is no dispute that TAJ and TJJ had an established custodial environment with plaintiff. At issue is whether they also had an established custodial environment with defendant. Defendant's sole argument with respect to this issue is that the trial court's established-custodial-environment analysis relied too heavily on the assumption that defendant had moved to Wisconsin in 2021 and was not actively involved in the children's lives. Defendant argues that the evidence presented at trial showed that she did not move to Wisconsin, but only visited for a period of time; further, even if she did move Wisconsin in 2021, it was uncontested that from July 2022 through April 2024, she saw the children at least twice each week. Defendant argues that the trial court committed clear legal error by not basing its decision on information that was up-to-date at the time of the trial. We disagree.

The record shows that the trial court reviewed and considered up-to-date information in making its determination. The trial court stated as much in its written opinion when it explained that, in addition to reviewing the entire court file and the record of the referee hearing, it had considered the new evidence that the parties produced at the July 22, 2024 hearing. The trial court's consideration of up-to-date information is also evident in its analyses of the best-interest factors and the parenting-time factors. There is simply no support for defendant's contention that the trial court failed to consider up-to-date information before making any finding or dispositive ruling in this case, including the finding that an established custodial environment existed solely with plaintiff.

At the evidentiary hearing, defendant and Ortiz testified about defendant's relationship with the children, about the quality and characteristics of defendant's parenting time with the children, and about defendant's involvement in the children's school and their extracurricular activities. Beyond testimony that the children loved defendant and knew that she "had their back," there was little to no testimony illustrating whether or to what extent the children actually looked to defendant for "guidance, discipline, the necessities of life, and parental comfort." Although the trial court stated that its finding of an established custodial environment with plaintiff did not mean that the children did not look to defendant for guidance when they were in her care, it is clear from the trial court's ruling that the court did not believe that this rose to the level of creating an established custodial environment. To the extent that the trial court's determination of the children's established custodial environment was based in part on its assessment of the witnesses' credibility, this Court gives "special deference to the trial court's credibility assessments." *Brown*, 332 Mich App at 8.

Defendant has not shown that the trial court committed clear legal error or made findings against the great weight of the evidence. *Berger*, 277 Mich App at 706. Accordingly, she is not entitled to relief on this issue.

## V. CHANGE IN DOMICILE

Defendant argues that the trial court erred by determining that a change in domicile would have the capacity to improve plaintiff's and the children's lives. Again, we disagree. We review "a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors in MCL 722.31(4) under the 'great weight of the evidence' standard." *Rains v Rains*, 301 Mich App 314, 324; 836 NW2d 709 (2013).

A motion for a change of domicile requires a four-part analysis. First, the trial court must determine whether the moving party has shown by a preponderance of the evidence that the factors in MCL 722.31(4) support the move. Second, if the statutory factors support the motion for a change of domicile, the trial court must then determine whether an established custodial environment exists. *Moote v Moote*, 329 Mich App 474, 480; 942 NW2d 660 (2019). Third, "if the court finds that an established custodial environment exists, the trial court must next determine whether the change of domicile would modify or alter that established custodial environment." *Id*. (quotation marks and citation omitted). Fourth, "if and only if, the trial court finds that a change of domicile would modify or alter a child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence." *Rains*, 301 Mich App at 325.

We have already discussed defendant's argument concerning the established custodial environment. Defendant's primary remaining argument is that the trial court based its domicile decision almost entirely on Melo's circumstances, rather than the children's circumstances. It is true that the trial court considered that the move would be economically beneficial because of Melo's new job, which nearly doubled the salary that he earned in Michigan and provided opportunities to earn additional income by conducting football camps. However, the trial court also considered that plaintiff planned to resume her massage therapy business in Florida and that she had already found a location and started building her new client base. Although there was no expert testimony about the local economy, Melo testified that plaintiff could leverage the affluent community in Florida to expand her client base and increase the prices that she charged as a medical massage therapist. This evidence was not refuted. The trial court did not clearly err by finding that the move to Florida could be expected to enhance the family's financial stability.

In addition, there was testimony that the children's new school district in Florida was highly regarded, offering small class sizes, and had a supportive educational environment. The director of elementary schools for that district testified about the positive aspects of the particular schools that the children would attend, including high parental involvement, an "A" rating, and location in area with a low crime rate. The district would be able to accommodate one child's individualized education program, and the schools offered tutoring, STEM programs, and special education services, which were highly rated. Although the director could not compare the Florida schools to the children's Michigan school, the performance of students in the school district ranked

-7-

high within the state, and the performance of students at the children's prospective schools ranked high within the district.

Defendant acknowledges that the benefits of obtaining new employment can have a spillover effect, but she argues that it is improper to allow plaintiff to relocate the children on the basis of Melo's change of employment and that severing the children's ties to their Michigan community, school, and extended families outweighs any benefits of the move to Florida. We disagree. It is clear from the record that the trial court weighed the relevant factors, and although defendant is dissatisfied with the outcome, the trial court's findings were not against the great weight of the evidence. *Rains*, 301 Mich App at 324.

In her reply brief, defendant argues that what she terms the trial court's prioritization of plaintiff's fiancé over defendant is an impermissible extension of the equitable-parent doctrine. Under the equitable-parent doctrine,

> [a] spouse who is not a biological parent has standing to seek custody of a child born or conceived during their marriage when (1) the would-be equitable parent and the child acknowledge the parental relationship or the biological or adoptive parent has cultivated the development of a relationship over a period of time, (2) the would-be equitable parent desires to have the rights afforded a parent, and (3) the would-be equitable parent is willing to pay child support. [*Pueblo v Haas*, 511 Mich 345, 367; 999 NW2d 433 (2023).]

Nothing in the record supports defendant's contention that the trial court considered Melo as having standing to seek custody of the children, or otherwise viewed Melo as an equitable parent. Rather, Melo's job and income were important considerations in deciding plaintiff's motion to change the children's domicile. The trial court found that a preponderance of the evidence presented at the evidentiary hearing and the de novo review hearing showed that plaintiff's proposed change of domicile had the capacity to improve plaintiff's and the children's lives. The trial court's findings were not so contrary to the weight of the evidence that it is unwarranted or so plainly a miscarriage of justice that it warrants a new proceeding. See *Rains*, 301 Mich App at 324. Therefore, we are required to affirm the trial court's order pertaining to a change of domicile. See MCL 722.28.

## VI. CHANGE IN CUSTODY

Defendant argues that the trial court erred by granting plaintiff's motion to change custody, and by denying her motion. Specifically, she argues that the trial court's best-interest analysis was against the great weight of the evidence because it relied on outdated information, failed to adequately weigh the instability in plaintiff's circumstances and her refusal to honor defendant's joint legal custody, and failed to interview TAJ and TJJ and to consider their reasonable preferences. We disagree.

Defendant challenges the trial court's findings that best-interest factors found in MCL 722.23(d) (length of time the children lived in stable environment) and MCL 722.23(j) (willingness and ability of each parent to facilitate child's relationship with other parent) favored neither party.

Regarding factor (d), defendant argues that the trial court failed to give adequate weight to the number of times plaintiff moved after the divorce. It is true that plaintiff moved more frequently after the divorce than did defendant. However, the record shows that the trial court did consider not only the number of times that plaintiff and the children had moved, but also considered the reasons for those moves. The trial court noted that some of the moves were made to improve the lives of the children, and at least two of the moves were made because plaintiff's and her fiancé's Michigan home sold sooner than expected, while the evidentiary hearing and decision on plaintiff's motion for a change of domicile took longer than expected. Defendant does not point to any evidence indicating that the moves negatively impacted the children, nor does the record give the impression that the children's environment was unstable or chaotic. The children continued to attend the same schools, and defendant's exercise of parenting time was unaffected by the moves. Considering the reasons for plaintiff's moves and the absence of record evidence that the moves affected the children negatively, we cannot say that the trial court's finding that MCL 722.23(d) favored neither party was against the great weight of the evidence. *Fletcher*, 447 Mich at 878.

Regarding factor (j), defendant argues that the trial court failed to recognize how plaintiff's refusal to honor defendant's joint legal custody negatively affected defendant's relationship with the children. Defendant points out that plaintiff testified that she told TAJ to call the police if defendant did not bring them back when her parenting time was over and if the children felt unsafe. Defendant argues that this was an attempt by plaintiff to alienate her from the children. However, viewed in the context of plaintiff's fears about the shooting that took place outside of defendant's home, and the back-and-forth June 2022 ex parte orders, plaintiff's statement could be viewed as simply reminding the children to call for help if they felt unsafe. Defendant has not demonstrated that the trial court clearly erred by failing to weigh factor (j) in favor of defendant because of this statement.

Defendant also argues that Melo testified that he was a more important figure in the children's lives than defendant, and that this statement reflects plaintiff's attempts to alienate the children from defendant. Defendant does not accurately represent Melo's testimony. Melo specifically refused to say that he was more important to the children than defendant, but opined that it was important for the children to have a relationship with both him and with defendant and that he did not think either relationship more important than the other. Plaintiff never testified that Melo was more important in the children's lives than defendant. Even if Melo's opinion could be imputed to plaintiff, the trial court did not err by failing to give sufficient weight to his relatively benign statement.

Finally, defendant claims that plaintiff testified that the only reason she let the children visit defendant at all was because she was required to do so by court order. Again, the record does not support defendant's characterization of plaintiff's testimony. Plaintiff testified that she was concerned for the children's welfare when they were with defendant because of defendant's alleged temper, drug and alcohol use, and the fact that a shooting had taken place outside her home. Whether plaintiff's concerns were warranted or were overblown, there is no evidence that plaintiff shared them with the children or otherwise influenced the children's view of defendant.

In sum, defendant has not shown that plaintiff attempted to alienate her from the children or that plaintiff's admitted failure to share information with defendant was an attempt at alienation.

On this record, the trial court's finding that MCL 722.23(j) favored neither party was not against the great weight of the evidence. *Fletcher*, 447 Mich at 878.

Defendant also argues that the trial court clearly erred by not interviewing or otherwise considering the preference of TAJ (age seven) and TJJ (age six) under MCL 722.23(*i*). We disagree. MCL 722.23(*i*) requires a trial court to consider "[t]he reasonable preference of the child if the court considers the child to be of sufficient age to express [a] preference." This Court has recently found plain error based on a trial court's failure to consider this factor regarding a six-year-old child. See *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 8-9. However, in *Quint*, the trial court stated that it had not considered factor (*i*) at all, and noted that the parents had not asked the court to do so:

> [Factor (*i*)] is the reasonable preference of the child. That was not considered, and I don't even know at six whether the Court would be comfortable asking the child to express a preference, and regardless, neither party even suggested or thought that was something appropriate, certainly didn't ask the Court to do the same. [*Quint*, ___ Mich App at ___; slip op at 2.]

The trial court in *Quint* never made a definitive finding that the child was too young to express a preference; rather, it merely stated that the court did not know if it would "be comfortable" asking the child to do so. *Id.* And the trial court appears to have placed the onus to some degree on the parents to have requested consideration of this factor. *Id.* By contrast, the trial court in this case stated unequivocally that it had found the children too young to express a reasonable preference. Although the trial court did not elaborate on the reasoning behind its finding, the trial court's findings on this factor were "brief, definite, and pertinent" as required by MCR 2.517(A)(2), especially in light of the fact that neither party disputed this finding. See *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981) ("Neither the mandate of the Child Custody Act nor [the requirements of MCR 2.517(A)(2)] . . . requires in cases involving child custody decisions that the court comment upon every matter in evidence or declare acceptance or rejection of every proposition argued."). Defendant's only challenge to the trial court's finding is that this Court has found other children of age six or higher to have been old enough to express a reasonable preference. We decline to establish a bright-line rule that limits a trial court's ability to determine whether a child is old enough to state a reasonable preference regarding custody by essentially declaring that a trial court *must* find that a child age six or over is old enough to state a reasonable preference *unless* extenuating circumstances apply. If the Legislature had intended to limit the trial court's fact-finding or discretion in such a manner, it could have done so. Defendant has not established plain error.

VII. CONCLUSION

Defendant has not established that she is entitled to relief on the basis of the challenged ex parte orders. The trial court's findings under MCL 722.31(4) were not against the great weight of the evidence, and the court did not abuse its discretion by granting plaintiff's motion for a change of domicile; therefore, we affirm that portion of the trial court's order granting plaintiff's motion for a change of domicile. We likewise affirm the trial court's decision regarding the

children's established custodial environment, as well as the trial court's order granting plaintiff's motion for sole legal custody and denying defendant's motion for joint physical custody.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace